841 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John S. LAMBERT, Jr., Plaintiff-Appellant,
v.
BRISCOE MANUFACTURING COMPANY, Defendant-Appellee.
 No. 87-3417.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before BOYCE F. MARTIN, Jr., and ALAN E. NORRIS, Circuit Judges and JOINER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 John S. Lambert, Jr. appeals the entry of judgment in favor of Briscoe Manufacturing in this employment discrimination action brought under 42 U.S.C. Sec. 2000e-5(f)(3).
 
 
 2
 Lambert, a black male, alleges that, because of his race, Briscoe denied him promotions, discriminated against him in the general terms and conditions of his employment, and discharged him in retaliation for filing charges of discrimination against it with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. On September 10, 1985, the case was referred to a federal magistrate for trial, report, and recommendation pursuant to 42 U.S.C. Sec. 2000e-5(f)(5). Trial was held December 9, 10, 11, and 13, 1985. On September 15, 1986, the magistrate filed his report and recommendation that judgment be entered for Briscoe.
 
 
 3
 The magistrate's findings can be summarized. In September of 1978, Lambert was hired by Briscoe as an engineer. At that time, Briscoe was a small company manufacturing thermal blankets, heating cable, and other flexible heating products. In April 1980, Robert Pennington was promoted from Project Engineer Coordinator to Systems Sales Manager. Lambert asked his supervisors to consider him for promotion to Project Engineer Coordinator. The Project Engineer Coordinator position vacated by Pennington was never refilled. In October 1980, Pennington left Briscoe. Lambert asked to be considered for promotion to the vacant Systems Sales Manager post. Briscoe hired two white males from outside the company to fill its Systems Sales Manager needs. Both men had extensive sales experience; Lambert had no sales experience.
 
 
 4
 Briscoe never sent Lambert to trade shows. Once, Briscoe sent an engineer to a trade show; Kamil Hvizda demonstrated control products that were his specialty. Lambert fell ill and missed several consecutive days of work in October 1980. Lambert's supervisors asked Lambert to provide a doctor's excuse for the absence. Lambert did not provide a doctor's excuse, but Briscoe took no action as a result of Lambert's failure to produce a doctor's excuse. On November 10 and December 5, 1980, groups of Briscoe employees went to lunch. Lambert was not invited to either lunch. Neither lunch was company-sponsored, and Lambert did not complain to Briscoe management about his exclusion. Lambert did attend some social functions and some business functions with fellow Briscoe employees. Briscoe moved Lambert's office without advance notice on three separate occasions. In each instance, the contents of his desk had been emptied into boxes. During that time, Briscoe office moves were frequent. Some employees had advance notice of the moves, others, like Lambert, did not. On December 15, 1980, Lambert filed a charge of racial discrimination against Briscoe with the Ohio Civil Rights Commission. On December 22, 1980, Lambert filed a similar charge with the Equal Employment Opportunity Commission. The charges were received by Briscoe on January 8, 1981.
 
 
 5
 In the Fall of 1980, Briscoe developed a new uniform tardiness policy to apply to salaried employees. This policy, which would become effective January 1, 1981, had a racially-neutral genesis: manufacturing employees complained that they were subject to tardiness rules while office personnel were not. On November 10, 1980, the new tardiness rules were circulated to Briscoe's salaried employees. On November 11, 1980, supervisors explained the new rules to all affected employees. The rules provided that an employee who was not at his work station by 8:00 A.M. would be counted as tardy. Four instances of tardiness in one month would result in a verbal warning. Eight tardies within three months would result in a written warning. Twelve tardies within six months would result in a written warning and a three day suspension. Sixteen tardies within twelve months would result in termination. On January 5, 1981, Briscoe supervisors provided four employees, including Lambert, with a memo of their tardies for the last three months of 1980. All four were warned of the applicable penalties under the new rules. Briscoe's salaried employees kept their own attendance records, but their supervisor's word was final as to whether they were tardy or absent on a particular day. On some days, supervisors changed the time cards of employees, including Lambert, to indicate that, despite the employees' claims, the employees were tardy. On March 2, 1981, Lambert received written notice that he had been tardy four times during the month of February. Lambert successfully challenged one of the tardies, and Briscoe removed the warning from Lambert's record. On May 6, 1981, Lambert received written notice that he had been tardy four times in April and twelve times since the first of the year. The notice listed tardies on January 23, February 2, 3, and 27, March 19 and 24, April 3, 22, 23, and 30, and May 1 and 5. Lambert was given the opportunity to comment on the warning and suspension, but he did not do so. The notice stated that "[t]he absence of any statement on the part of the EMPLOYEE indicates his/her agreement with the report as stated." In accordance with Briscoe's tardy policy, Lambert was suspended for three days. Lambert was also tardy on May 6, 14, 15, and 18. On May 18, 1981, Lambert was terminated for sixteen tardies during a one year period. Lambert did not contest the termination notice. Briscoe enforced its tardiness policy evenly; two other Briscoe employees, who were white, were terminated in 1981 for accumulating sixteen tardies within one year.
 
 
 6
 Lambert disputed the accuracy of a number of the sixteen tardies before the magistrate. The magistrate found that Lambert seriously contested only three tardies: January 23, February 27, and May 5. The magistrate found that a preponderance of the evidence established that Briscoe reasonably and in good faith marked Lambert as tardy on February 2 and 3, March 19 and 24, April 3, 22, 23, and 30, and May 6, 14, 15, and 18.[1] On January 23, 1981, Lambert arrived at work at 10:00 A.M. Lambert had called that morning at 8:00 A.M. and asked that the morning's personal leave be charged as sick leave. Lambert argued that he should not have been counted as tardy. The magistrate relied on the grounds in deciding that Lambert failed to establish by a preponderance of the evidence that Briscoe acted with racially discriminatory intent when it found Lambert to be tardy on January 23, 1981. First, Briscoe subsequently adopted a formal personal leave policy that required an employee to call in one day in advance to request that sick pay be used for personal leave. Second, other employees who arrived late because of illness were also counted as tardy in January 1981. Third, Lambert did not challenge his January 23, 1981 tardy until the case was before the magistrate. On February 27, 1981, Lambert arrived at work at 10:30 A.M. At 8:00 A.M., he had notified his supervisor that he would be late because he needed to repair a broken window in his car. Lambert again did not challenge the tardy. The magistrate concluded that, although it might have been more considerate for Briscoe to have excused the tardy, Lambert failed to prove by a preponderance of the evidence that Briscoe acted with racially discriminatory intent when it counted him tardy on February 27, 1981. On May 5, 1981, Lambert was sick and arrived at work at 10:00 A.M. Lambert did not telephone Briscoe. Moreover, he had exhausted all of his sick pay in April. Finally, Lambert did not challenge the tardy. The magistrate again concluded that Lambert failed to prove by a preponderance of the record that Briscoe acted with racially discriminatory intent when it counted him absent on May 5, 1981.
 
 
 7
 The magistrate found in favor of Briscoe on Lambert's claim that he was unfairly denied promotion. Specifically, the magistrate found that Lambert failed to establish the four necessary elements of a prima facie Title VII denial of promotion case. Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 375 (6th Cir.1984). Because Briscoe never refilled Pennington's Project Engineer Coordinator position, Lambert could not establish that he was denied promotion to that position because of his race. Moreover, Lambert, who lacked any sales experience, was unqualified for the position of Systems Sales Manager.
 
 
 8
 The Magistrate also found in favor of Briscoe on Lambert's claim that he was discriminated against in the general terms and conditions of his employment. First, the magistrate found that Lambert failed to prove by a preponderance of the evidence that Briscoe denied Lambert the opportunity to attend trade shows while similarly situated white employees attended them. Second, the magistrate found that Lambert failed to prove by a preponderance of the evidence that Briscoe acted with racially discriminatory intent when he was asked for a doctor's excuse for his absence from work in October 1980. Third, the magistrate found that Lambert failed to prove by a preponderance of the evidence that Briscoe treated him differently from white employees in its social and business functions. Finally, the magistrate found that Lambert failed to prove by a preponderance of the evidence that Briscoe acted with racially discriminatory intent in moving Lambert's office three times without advance notice. The magistrate found these moves troubling, but he recognized that Briscoe was frequently moving other employees as part of its reorganizations. Other employees had also been moved without notice. Moreover, the magistrate found Lambert's claims barred by his failure to file a charge within 180 days of the alleged acts of discrimination as required by 42 U.S.C. Sec. 2000e-5(e).
 
 
 9
 Finally, the magistrate found that Lambert failed to prove by a preponderance of the evidence that Briscoe fired him in retaliation for his filing charges of racial discrimination. Jackson, 743 F.2d at 375. The magistrate found that Lambert was discharged under its racially-neutral tardiness policy because Briscoe in good faith found that Lambert had sixteen tardies in a five-month stretch. Accordingly, the magistrate recommended that judgment be entered for Briscoe.
 
 
 10
 On October 6, 1986, Lambert, who had received an extension of the ten day filing period, filed a motion for reconsideration of the magistrate's report and recommendation under a clearly erroneous standard. Finding the magistrate's findings of fact and conclusions of law not clearly erroneous, the district court adopted the magistrate's report and recommendation, denied Lambert's motion for reconsideration, and entered judgment in favor of Briscoe.
 
 
 11
 On appeal, Lambert attacks 32 of the magistrate's 53 findings of facts as clearly erroneous. Lambert further argues that the magistrate committed reversible error in concluding that Briscoe did not discriminate against Lambert in refusing him promotion or in the terms and conditions of his employment, and that Briscoe did not discharge Lambert in retaliation of his discrimination charge filed with the Equal Employment Opportunity Commission.
 
 
 12
 We have reviewed the magistrate's findings of fact under a clearly erroneous standard, Brown v. Wesley's Quaker Maid, Inc., 771 F.2d 952, 954 (6th Cir.1985), and we have found that the disputed findings are supported by evidence in the record and that the magistrate's construction of that evidence was reasonable. Heights Community Congress v. Hilltop Realty, Inc., 774 F.2d 135, 140 (6th Cir.1985), cert. denied, 104 S.Ct. 1206 (1986). The magistrate's findings of fact cannot be set aside as clearly erroneous.
 
 
 13
 Under Jackson, the plaintiff in a Title VII denial of promotion claim must establish (1) that he belongs to a racial minority, (2) that he applied for and was qualified for a desired position for which the employer was seeking applicants, (3) that, despite his qualifications, he was rejected, and (4) that after his rejection, the employer continued to seek applicants of the plaintiff's qualifications. Jackson, 743 F.2d at 375. The magistrate properly concluded that Lambert failed to establish the fourth necessary element of his Project Engineer Coordinator claim because Briscoe never sought to refill the position. Similarly, the magistrate rightly recognized that Lambert failed to establish the second necessary element of his Systems Sales Manager claim because the evidence showed that Lambert was unqualified for the position. The district court properly entered judgment in favor of Briscoe on Lambert's denial of promotion claim.
 
 
 14
 The magistrate concluded that Lambert failed to establish a discriminatory intent on the part of Briscoe in its alleged disparate treatment of Lambert in the terms and conditions of his employment. Grano v. Dept. of Development of City of Columbus, 637 F.2d 1073, 1081 (6th Cir.1980). This conclusion finds ample support in the record and, consequently, cannot be reversed as clearly erroneous.
 
 
 15
 Finally, Lambert argues that Briscoe's tardiness policy was applied in a discriminatory manner towards him because he filed a charge with the Equal Employment Opportunity Commission. In making this argument, Lambert relies on evidence that Jeff Silvers, one of the white employees dismissed for accumulating sixteen tardies within a year, was not fired immediately upon the accumulation of his sixteenth tardy. Silvers was fired on May 7, 1981, eleven days before Lambert was fired. At that time, Silvers had accumulated nineteen tardies. Lambert argues that the fact that Silvers was not fired immediately upon accumulation of his sixteenth tardy indicates that Briscoe dismissed Lambert in retaliation for filing a charge with the Equal Employment Opportunity Commission.
 
 
 16
 Lambert's argument is unpersuasive. Silvers accumulated his sixteenth, seventeenth, eighteenth, and nineteenth tardies during his last week of employment. Moreover, Silvers was terminated immediately upon his supervisor's notification of Silvers' sixteenth tardy. Therefore, both Lambert and Silvers were terminated immediately when their respective supervisors became aware that they had accumulated their sixteenth tardy, and both were terminated promptly after accumulating their sixteenth tardy. Contrary to Lambert's contentions, the circumstances of Silvers' dismissal do not establish that the magistrate erred in concluding that Lambert was not fired in retaliation for filing a charge with the Equal Employment Opportunity Commission. The district court properly entered judgment in favor of Briscoe on Lambert's retaliatory discharge claim.
 
 
 17
 The judgment of the district court is affirmed.
 
 
 
 *
 Honorable Charles W. Joiner, Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Magistrate's report did not include May 1 among this list of uncontested tardies. Nevertheless, it is clear that Briscoe counted May 1 among the sixteen tardies for which Lambert was fired, that the magistrate counted May 1 among the tardies recorded reasonably and in good faith by Briscoe, and that Lambert never contested the May 1 tardy. Consequently, we believe that the magistrate inadvertently omitted May 1 from its list of uncontested tardies in its finding of fact # 46. The magistrate's recommendation of judgment for Briscoe was based on a finding that Lambert accumulated sixteen tardies: thirteen uncontested tardies (the twelve tardies listed in finding # 46 and the inadvertently omitted May 1 tardy) plus three contested tardies (January 23, February 27, and May 5)