951 F.2d 351
 59 Fair Empl.Prac.Cas. (BNA) 1056
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Welton WRIGHT, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.
 No. 88-2096.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this, his second appeal to this court, plaintiff Welton Wright, a black man, appeals the district court's judgment entered against him on September 22, 1988, on his claim under Title VII, 28 U.S.C. § 2000e et seq., against defendant General Motors Corporation ("GM"). Specifically, plaintiff alleges that defendant promoted two white workers ahead of him to the position of fixture detailer on the basis of his race. Plaintiff raises three issues on appeal: (1) Whether the district court's findings of fact and conclusions of law are insufficient to sustain the judgment under Federal Rules of Civil Procedure 52(a), (2) whether the district court's findings of fact are clearly erroneous, and (3) whether plaintiff has waived his right to challenge the dismissal of his state claims against defendant and his claim for compensatory damages under Title VII because he failed to raise this challenge on his first appeal to this court. For the reasons that follow, we affirm.
 
 I.
 A. Procedural History
 
 2
 Plaintiff filed this action against defendant GM for race discrimination in February 1978. In his complaint, plaintiff alleged that his former employer discriminated against him on the basis of race by (1) failing to promote him from a position of blueprint machine operator to the position of senior clerk, (2) failing to promote him from the position of senior clerk to the position of fixture detailer, (3) demoting him during a reduction in force, and (4) terminating his employment on the basis of his race and in retaliation for filing a claim with the Equal Employment Opportunity Commission. Plaintiff brought his claims under Title VII of the Civil Rights Act of 1986, 28 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. § 1981; and Michigan's Elliott-Larsen Civil Rights Act.
 
 
 3
 On March 26, 1979, the district court dismissed plaintiff's state claims under the Elliott-Larsen Civil Rights Act because those claims were time-barred by the applicable statute of limitations. The district court also struck from the complaint plaintiff's claim for compensatory damages under Title VII finding that such a claim exceeded those equitable damages allowed under Title VII. As of October 28, 1981, the remaining claims were those brought under Title VII as indicated by the issues stated above.
 
 
 4
 Also on March 26, 1979, the district court granted summary judgment to GM as to the alleged discriminatory failure to promote plaintiff from blueprint machine operator to senior clerk in violation of Title VII. Partial summary judgment was granted on this issue because the alleged discriminatory acts were committed prior to July 2, 1965, when Title VII went into effect.
 
 
 5
 In September 1983, the district court conducted a bench trial on plaintiff's remaining claims of discriminatory failure to promote him from senior clerk to fixture detailer ("detailer"), his demotion in position during a 1970 reduction in force, and his racially motivated/retaliatory discharge in 1973. After plaintiff presented his proof, the district court found for defendants as to plaintiff's discharge from employment and his demotion in position during GM's reduction in force. Plaintiff's counsel then stated that the alleged discrimination during the reduction in force was being used only as evidence of discrimination and not as a separate claim of discrimination. Furthermore, in plaintiff's brief, plaintiff states the district court's ruling on the reduction in force is not challenged in this appeal.
 
 
 6
 The only remaining issue after plaintiff's proof was whether GM discriminated against plaintiff in promoting two white men, Marvin Coppernoll and Robert Katterjohn, ahead of plaintiff to the position of detailer. After defendant's proof, the district court issued a brief opinion from the bench stating that plaintiff had failed to carry his burden of proof of race discrimination under Title VII as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
 
 
 7
 Thereafter, plaintiff appealed to this court raising two issues: (1) whether the district court's findings of fact and conclusions of law were sufficient to sustain the judgment under Fed.R.Civ.P. 52(a), and (2) whether the district court's findings of fact were clearly erroneous under Fed.R.Civ.P. 52(a). Plaintiff argued that the district court's judgment and its reasons for the judgment were not stated with enough specificity to comply with Fed.R.Civ.P. 52(a). In our opinion dated May 15, 1986, we agreed, holding that the district court's findings of fact were "insufficient to permit effective appellate review." We further stated:
 
 
 8
 [I]t is essential that the findings and conclusions be stated with sufficient detail to permit effective appellate review. In this case, we find that we are not certain of the basis for the district court's holding. Specifically we find that it is unclear at what stage of the McDonnell Douglas test the court found that the plaintiff failed to carry his burden on each claim, and on what subsidiary factual findings the court based its ultimate factual findings. See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1980); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
 
 
 9
 Wright v. General Motors Corp., No. 83-1732, slip op. at 1-2 (6th Cir. May 15, 1988). Accordingly, we reversed the judgment of the district court and remanded for proceedings consistent with our opinion.
 
 
 10
 The district court issued new findings of fact and conclusions of law on September 20, 1988. A judgment in favor of GM was entered in the district court pursuant to its new findings of fact and conclusions of law on September 22, 1988. This timely appeal followed.
 
 B. Facts
 
 11
 Plaintiff began working for GM in 1955 as a stock handler at its A.C. Spark Plug facility. In 1963, Max Carpenter, the Supervisor of the Salaried Personnel Department at GM, asked plaintiff if he wished to become a salaried employee. Plaintiff responded affirmatively and became a blue print machine operator in Department # 85 in October 1963. He was the first black person employed in Department # 85. His duties were to duplicate drawings of prints.
 
 
 12
 After about ten months in that position, plaintiff approached his supervisor, Allen Smith, about being promoted to the position of senior clerk. However, in December 1964, Leon Kingsley was hired as senior clerk, and Smith informed plaintiff that he had not been chosen for the position because he needed to have the skill of typing for that position. Plaintiff then took a typing course and in August 1965, was promoted to senior clerk.
 
 
 13
 Approximately fifteen months later, in late 1966, plaintiff began asking management about a promotion to the position of detailer, the position next in line after senior clerk. Co-workers told him he needed to take courses in Body Layout, Descriptive Geometry, and Auto Body I, II, and III. Plaintiff also took courses in technical drawing, Algebra I, Geometry I and II and Physics. Plaintiff was enrolled in classes at the same time as Katterjohn and Coppernoll, who, unlike plaintiff, were already detailers. In 1968, plaintiff talked to all his superiors up to Plant Manager Berryman who recommended that he become a detailer. Subsequently, plaintiff was promoted to detailer.
 
 
 14
 In 1970, GM made a reduction in its work force, and plaintiff was demoted to the position of blue print machine operator. Plaintiff was placed at the position of blue print machine operator when others with less seniority than he were placed in better positions as payroll auditors. Plaintiff went to the Fisher Body Division headquarters in Warren, Michigan, to discuss this situation with the head of the division, Mr. Middleton. Three weeks later plaintiff was offered a payroll auditing position or another senior clerk job on the third shift. He initially rejected these offers but eventually took one of these positions which he held until he was called back to the position of detailer during July 1971. In the meantime, on October 21, 1970, he filed a complaint of racial discrimination with the Equal Employment Opportunity Commission.
 
 
 15
 In February 1972, plaintiff was disabled by injuries sustained in an automobile accident. The next year, plaintiff worked only one and one-half days, and GM suggested to plaintiff that he might qualify for total and permanent disability benefits and social security disability benefits. Plaintiff then spoke with Max Carpenter and informed him that he wanted extended disability benefits. According to plaintiff's understanding, extended disability benefits would permit him to return to work when he was able; however, total and permanent disability benefits meant a worker could never return to work at GM. Plaintiff had at least two conversations with Carpenter who informed him that total and permanent disability was the same as extended disability status. In fact, Carpenter testified that he repeatedly explained plaintiff's rights to him and gave him the total and permanent disability form which contained space for medical verification. He also testified that he did not want to give plaintiff an extended disability benefit form because it did not contain space for medical verification.
 
 
 16
 Plaintiff, however, continued to be unsatisfied with Carpenter's explanation. On September 11, 1973, GM notified plaintiff by letter that plaintiff had failed to produce satisfactory evidence of his continuing disability and that if he failed to do so by September 21, 1973, GM would separate him from the payroll. Plaintiff then had another conversation with Carpenter who again informed him that extended disability status and total and permanent disability were the same. Plaintiff then obtained an extended disability application form, filled it out and mailed it in. However, this form contained no space for a doctor's statement, and plaintiff did not attach any medical verification of his continuing disability. Consequently, GM notified plaintiff by letter dated October 3, 1973, that plaintiff was separated from employment because he had not complied with the September 11, 1973, letter. On November 18, 1977, the Equal Employment Opportunity Commission issued plaintiff a right-to-sue letter, and plaintiff filed this action against GM.
 
 II.
 
 17
 While Fed.R.Civ.P. 52(a) does not require a district court to make elaborate findings on every possible issue raised at trial, the court's findings must be "in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated." Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784, 792 (6th Cir.1984). Kasuri v. St. Elizabeth Hosp. Medical Ctr., 897 F.2d 845, 850-51 (6th Cir.1990). The purpose of this requirement is to give the appellate court a clear understanding of the reasons for the district court's decisions and enable the appellate court to effectively review the decision. Id. Under Fed.R.Civ.P. 52(a), a district court's findings of fact will not be set aside unless they are clearly erroneous. Jackson v. RKO Bottlers of Toledo, Inc., 743 F.2d 370, 374 (6th Cir.1984). A finding of fact is clearly erroneous when, upon review of the entire record, this court is left with a definite and firm conviction that a mistake has been made. Id. However, this court will review de novo the district court's conclusions of law in a Title VII action. See Jackson, 743 F.2d at 374.
 
 
 18
 Where a plaintiff, as in this case, alleges that his employer has intentionally discriminated against him on the basis of race in a term or condition of employment, then plaintiff is alleging disparate treatment by his employer in violation of Title VII. See Burton v. State Adult Parol Authority, 798 F.2d 164, 166 (6th Cir.1986). Where there is no direct evidence of intentional discrimination in a disparate treatment case, the proper analysis is that set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson, 743 F.2d at 374. Under the McDonnell Douglas test, plaintiff initially bears the burden to establish by a preponderance of the evidence a prima facie case for discrimination. McDonnell Douglas Corp., 411 U.S. at 802; Ang v. Proctor & Gamble Co., 932 F.2d 540, 548 (6th Cir.1991). To establish a prima facie case, plaintiff must show (1) that he is within a protected class, (2) that he was qualified for the position he sought, (3) that he was subject to an adverse employment action, and (4) someone else outside the protected class received the position. Id. If the plaintiff successfully establishes a prima facie case for discrimination, then the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's discharge." Ang, 932 F.2d at 548 (citing McDonnell Douglas, 411 U.S. at 802). Once the defendant articulates a legitimate, nondiscriminatory reason, the burden of production shifts back to the plaintiff to prove that the defendant's "legitimate" reason is a mere pretext for discriminatory acts. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Ang, 932 F.2d at 548.
 
 
 19
 In order to understand the district court's legal reasoning and the factual basis for its decision, it is necessary to review both the district court's 1983 opinion and its 1988 opinion. In its 1983 opinion, the district court stated:
 
 
 20
 The Court will find that there's been no evidence of overt racial discrimination. That is, there's been no direct evidence, and therefore we will refer to the McDonnell Douglas test.
 
 
 21
 The Court finds in two ways. The McDonnell test sometimes is a little confusing. The Court finds that with regard to promotion from Senior Clerk to Detailer, that the Plaintiff has failed to sustain its burden showing that he was as qualified as those who did appoint or were appointed.
 
 
 22
 The Court will find that there is no direct relationship, based upon the evidence, of the position or from the position of Senior Clerk to Detailer. That all the testimony indicates that people can be brought in from the outside or could be promoted from within, depending upon their qualifications for the position.
 
 
 23
 The Court finds that the plaintiff failed to establish that he was as qualified as those who did receive the position of Detailer.
 
 
 24
 .............................................................
 
 
 25
 ...................
 
 
 26
 * * *
 
 
 27
 So I find that the plaintiff has failed to sustain his burden of proof.
 
 
 28
 Appellant's Brief at 10 (emphasis added).
 
 
 29
 Upon remand, the district court's September 21, 1988, findings of fact were quite detailed tracing plaintiff's progression from a blue print machine operator to his eventual separation from GM. The district court's second opinion provides the factual findings upon which it reached the legal conclusion stated in its first opinion.
 
 
 30
 Plaintiff argues that because he had more seniority in Department # 85 than Katterjohn or Coppernoll, he should have been promoted ahead of them. However, the district court found that plaintiff erroneously had determined that there was an automatic promotion track from the bottom positions to the top positions in Department # 85 even though he was never told this, and he was aware that openings in the department were often filled by bringing others in from outside the department. In fact, plaintiff testified that no one had told him there was an automatic promotion track in Department # 85, and he admitted that he knew other employees had been brought in to Department # 85 from the outside.
 
 
 31
 Plaintiff also argues that he was as qualified as Coppernoll and Katterjohn for the position of detailer, and that Coppernoll and Katterjohn were allowed to take courses after they attained the position while he was required to take courses before he was promoted. However, in regard to Coppernoll's and Katterjohn's qualifications, the district court found:
 
 
 32
 Coppernoll was transferred into the department ahead of plaintiff as a junior designer because he was more qualified than a senior clerk, since Coppernoll had been a Welding Equipment Maintenance Repair (WEMR) journeyman. This (jig and fixture detailer) is a skilled trades position which required a considerable amount of time drawing, sketching and planning. Thus, they are required to be knowledgeable in engineering drawing classes, mechanical engineering, auto body layout and descriptive geometry. A file clerk files, ships and types; a detailer does drawings. Thus, a WEMR journeyman is more qualified to be a detailer than a clerk. A WEMR employee is a part of engineering where a clerk is a part of administration. A highly-qualified clerk is not necessarily qualified to become a detailer just because he has experience as a senior clerk. Thus a WEMR journeyman is more qualified to be a detailer than a senior clerk. As to Katterjohn, he was a superstar, knowledgeable, at the time he was put into the detailer's position, in hydraulics, pneumatics, mechanics, electronics and electricity and was already qualified to be a junior designer.
 
 
 33
 (Emphasis added).
 
 
 34
 Plaintiff admitted that before he took courses required by GM, he had had no training in mechanical drawing, and he does not contend that he had any previous mechanical drawing experience or skills. On the other hand, the supervisor for Department # 85, Alan Smith, testified that Coppernoll as a WEMR journeyman had hands-on experience with the very equipment he would be required to draw as a detailer, that he also had four semesters of drawing, and had worked as a draftsman in his spare time. Smith also testified that Katterjohn had worked as a process engineer doing drawing and planning and that he had knowledge of hydraulics, pneumatics, mechanics, electronics, and electricity. In short, GM considered him a "superstar."
 
 
 35
 Smith further testified as to the responsibilities of a detailer. A detailer must be able to draw the smallest part of any given machine in order that tool makers and gauge workers can construct the parts from the drawing. In drawing pieces of machinery, a detailer works from blueprint sketches made by a designer. Regarding the duties of a senior clerk compared to those of a detailer, Smith stated, "[t]here is no comparison" because one involves engineering and one involves administration. GM also presented other evidence to illustrate the filing, shipping, and typing responsibilities of a clerk.
 
 
 36
 Plaintiff argues that because he was as qualified as Coppernoll and Katterjohn when they were promoted to detailers, he too was qualified when he first requested the promotion. However, the evidence clearly supports the district court's finding that Coppernoll and Katterjohn were more qualified than plaintiff for the position of detailer. Thus, the district court's finding was not clearly erroneous.
 
 
 37
 Moreover, in light of the fact that the position of detailer required skills in mechanical drawing which plaintiff did not have when he initially applied for the position, the court's finding that he was not qualified for the position when he first requested it is well founded and not clearly erroneous. Thus, as the district court stated in its 1983 opinion, plaintiff has failed to sustain his burden of proof in establishing a prima facie case for employment discrimination because he failed to prove he was qualified for the position as a detailer. Therefore, under the McDonnell Douglas test, his claim must fail.
 
 
 38
 Finally, plaintiff's last challenge is that the district court erroneously dismissed his state claims and his claim for compensatory damages under Title VII on March 26, 1979. However, plaintiff failed to raise this issue on his first appeal to this court. Where an appellant fails to raise an issue on his first appeal, that issue is waived as to any subsequent appeals. Haynes v. U.S., 418 F.2d 1380, 1382 (Ct.Cl.1969); see also Alioto v. Cowles Communications, Inc., 623 F.2d 616, 618 (9th Cir.1980), cert. denied, 449 U.S. 1102 (1981). Therefore, this court need not address this issue.
 
 III.
 
 39
 For the foregoing reasons, the judgment of the district court in favor of defendant is AFFIRMED.