Brenda M. COLEMAN

v.

STATE OF TENNESSEE.

No. 3:89–0242.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 1, 1993.

584

Bob Lynch, Nashville, TN, for plaintiff.

S. Elizabeth Martin, Nashville, TN, for defendant.

### *MEMORANDUM*

JOHN T. NIXON, Chief Judge.

Pending before the Court in the above-styled case are Plaintiff's Motion For Summary Judgment (Doc. No. 37), to which Defendant has filed an Opposition (Doc. No. 46); Defendant's Motion for Summary Judgment (Doc. No. 45), to which Plaintiff has filed an Opposition (Doc. No. 51); and Plaintiff's Supplemental Motion For Summary Judgment (Doc. No. 55), to which Defendant has filed an Opposition (Doc. No. 61). On November 18, 1993, the Court heard oral arguments from the parties on the parties' respective Motions. For the reasons stated below, the Court denies Plaintiff's Motions, and denies in part and grants in part Defendant's Motion.

### I. BACKGROUND

Plaintiff Brenda M. Coleman brings this action under 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, for unlawful race and sex discrimination in employment. (Compl., Doc. No. 1, at 1.) Plaintiff alleges that Defendant State of Tennessee violated her rights under Title VII by illegally exposing her to a racially and sexually hostile work environment; discriminating against her on the basis of race and sex in promotions; and retaliating against her after she filed a charge with the Tennessee Human Rights Commission. (Doc. No. 1–3, at; Pl.'s Mot.Summ.J., Doc. No. 37, at 1, 24–29.) As well, Plaintiff asserts that Defendant violated Tenn.Code Ann. § 8–30–320 by failing to consider affirmative action goals or policies in its determination of which employees' positions would be eliminated under a Reduction–In–Force ["RIF"]. (Doc. No. 37, at 20.)

Plaintiff seeks back pay with prejudgment interest, front pay, retirement benefits, and declaratory and injunctive relief. (Doc. No. 1, at 1, 3; Doc. No. 37, at 1; Pl.'s Supplemental Mot.Summ.J., Doc. No. 55, at 7.)

Plaintiff ["Dr. Coleman"] is an African-American female. (Doc. No. 1, at 1.) She graduated from Fisk University with a Bachelor of Arts degree in 1965, and received a Master of Science degree in guidance and counseling from Tennessee State University in 1970. (Doc. No. 37, at 2.)

In April 1971, Dr. Coleman began working for Defendant as a Field Vocational Rehabilitation Counselor II, grade 18, in the Division of Vocational Rehabilitation of the State Department of Education. In 1984, while working for Defendant, Dr. Coleman received a Doctorate in education and psychology from Tennessee State University. (Doc. No. 37, at 2.)

Dr. Coleman was promoted twice during her employment with Defendant, in 1973 and 1975. (Doc. No. 37, at 2–3.) From 1975 until October 31, 1987, Dr. Coleman remained in the position of Education Specialist, grade 23, in the Central Office of Vocational Rehabilitation. (*Id.*) In her position as Education Specialist, Dr. Coleman's job performance was rated "good" to "superior" to "exceptional." (Ex. 25, Dep. Mathews, Doc. No. 41; Dep. Lee, Doc. No. 42, at 80.) While serving in that position, Dr. Coleman was the only black and only female working in a professional capacity in the Division of Vocational Rehabilitation. *Id.*, at 27.

While working in the Central Office, Dr. Coleman alleges that she was exposed to a longstanding pattern of racial hostility from her white male co-workers. (Aff. Coleman, Doc. No. 38, at 3.) In 1978, Dr. Coleman claims that most of the white male Agency Directors, including William Williams, James Gardner, James Brooks, Jack Van Hooser, Richard Childs, Carl Corlew, Sidney Corban, gathered in the office adjacent to hers during lunch and that during one of these lunches several of the men began telling "nigger" jokes very loudly. (Doc. No. 38, at 3; Pl.'s Resp.First Interrogs., Doc. No. 49, at 5–6.) Dr. Coleman reported this incident and the men involved were required to apologize. (Def.'s Resp.Pl.'s Statement Material Facts, Doc. No. 47, at 2.)

Between 1975 and 1987, Dr. Coleman was not promoted. (Doc. No. 37, at 3; Doc. No. 47, at 2.) During that same time period, the following white co-workers received pro-

motions: (1) In July 1983, James Brooks, a white male, was promoted from Vocational Rehabilitation Supervisor, grade 23, to Rehabilitation Director, grade 27; (2) in July 1983, Jack Van Hooser, a white male, was promoted from Rehabilitation Director, Grade 27, to Rehabilitation Director, grade 30; (3) in July 1983, Phillip Wagster, was promoted from Rehabilitation Supervisor, grade 23, to Rehabilitation Director, grade 27; (4) in July 1983, William Williams, a white male, was appointed Director of Policy, Planning, and Program Development; (5) in July 1983, Theresa Thornhill, a white female, was promoted to Director of Research and Training; (6) in July 1983, Frank Lee, a white male, was promoted to Director of Field Operations; (7) on September 1, 1983, William Archie, a white male, was promoted to Assistant Director of Field Operations; (8) in March 1984, Mr. Lee assumed the position of Director of the Special Programs Unit, where he also served as Dr. Coleman's supervisor; (9) on February 1, 1985, Sherry Harrison, a white female, was promoted to Assistant Commissioner of the Division of Vocational Rehabilitation; (10) in October 1985, Joseph Sharrer, a white male, was promoted from Superintendent of the Rehabilitation Center to Assistant Commissioner of Vocational Rehabilitation Services; (11) on July 14, 1986, Mr. Lee assumed the position of Director of Planning; and (12) in February 1987, Patsy Mathews, a white female was promoted to Assistant Commissioner of Vocational Rehabilitation Services. (Doc. No. 37, at 12–18; Doc. No. 49, at 11–12, 14–15.)

After the promotions in July 1983, Dr. Coleman alleges that Mr. Williams told her that the reason "they pushed you out was because you have two problems, you're black and you're female." (Doc. No. 38, at 3; Doc. No. 49, at 7–8.)

Dr. Coleman alleges that she was not promoted due to her race and gender, and that she was highly-qualified for the promotions which other employees received. (Doc. No. 37, at 3, 12–18; Doc. No. 49, at 11–12, 14–15.) As well, Dr. Coleman states that Defendant did not advertize the positions as being available and that, as a result, Dr. Coleman was excluded from applying for such positions.

(Doc. No. 37, at 12–18; Doc. No. 49, at 11–12, 14–15.) Defendant disputes Dr. Coleman's claim that the positions were not publicly announced and asserts that Civil Service rules and regulations were followed. (Doc. 47, at 2.)

On March 18, 1987, Dr. Coleman alleges that Mr. Lee told her that the Special Program Unit in Rehabilitation "was set up to save three people, you, Richard Childs, and me because they didn't want Richard at Smyrna and because nobody (pointing to indicate the entire Rehabilitation Office) wanted to work with you. Now none of these people want you in no parts of any program areas, nobody wants you nowhere anywhere in Rehabilitation." (Doc. No. 38, at 3; Ex. 6, Doc. 41; Doc. No. 49, at 9.)

On March 30, 1987, Dr. Coleman submitted a letter to Assistant Commissioner Mathews as an informal complaint about "equal access to promotional opportunity." (Ex. 6, Doc. 41.) Dr. Coleman alleges that her charges were never taken seriously nor investigated. (Doc. No. 38, at 4.) On April 24, 1987, Assistant Commissioner Mathews responded by letter to Dr. Coleman's complaint. (Ex. 9, Doc. No. 41.) Ms. Mathews noted that she would only address Dr. Coleman's allegation regarding about Mr. Lee's March 18, 1987, comment because it was the only incident that occurred after Ms. Mathews had become Assistant Commissioner in February 1987. (Id.) Assistant Commissioner Mathews stated that it was her opinion that Dr. Coleman's "differences" were "more a lack of effective communication than harassment, malice, or discrimination." (Id., at 2.)

On May 14, 1987, and on May 29, 1987, Plaintiff filed a charge of race and sex discrimination against Defendant with the Equal Employment Opportunity Commission ["EEOC"] and the Tennessee Human Rights Commission ["THRC"], respectively. (Doc. No. 38, at 5; Ex. 10, Dep. Mathews, Doc. No. 41.) Dr. Coleman's charges were delivered to Commissioner Min on June 11, 1987. (Doc. No. 49, at 16.)

On June 16, 1987, Commissioner Min advised Plaintiff that her job was being abolished under an RIF plan. (Ex. 15, Doc. No. 41.) The plan was originally drafted in Janu-

ary 1987 after Rehabilitation Services was asked to eliminate positions in an RIF designed to reduce budget expenditures. (Def.'s Mem.Opp'n Pl.'s Mot.Summ.J., Doc. No. 46, at 8.) At that time, two positions with the same classification as Dr. Coleman's were targeted for elimination, but Dr. Coleman's own position was not among the two identified. (*Id.*, at 8–9.) The same positions were targeted for elimination on subsequent drafts of the plan, dated February 2, 1987, and May 14, 1987. (*Id.*, at 9; Doc. No. 41, at 129.)

On June 16, 1987, Dr. Coleman amended her charge of discrimination filed with the THRC to add a claim for unlawful retaliation. (Ex. 19, Doc. No. 41.)

On June 18, 1987, Assistant Commissioner Mathews stated in a memorandum that Plaintiff's position was being eliminated because she had less seniority than another employee whose position was originally targeted. (Ex. 16, Doc. No. 41.) As well, Assistant Commissioner Mathews stated that "[a]t no time subsequent to Dr. Coleman's discrimination complaint was her position eliminated solely because of the fact that she made such a complaint." (Ex. 18, Doc. No. 41.) Assistant Commissioner Mathews did not consider the Division's affirmative action policy before eliminating Dr. Coleman's position. (Doc. No. 47, at 4.)

On October 23, 1987, Dr. Coleman received a letter from Nancy Min, Commissioner of the Department of Human Services, advising her that the Personnel Section had been unable to locate a comparable position for her, but that she would be offered the position of Rehabilitation Counselor 2, grade 18, at the Nashville field office. (Ex. 21, Doc. No. 41.) Dr. Coleman was instructed that her salary would remain the same. (*Id.*) As well, Commissioner Min notified Dr. Coleman that if she failed to accept the offer she would be considered "in laid off status on October 31, 1987." (*Id.*)

On October 31, 1987, Dr. Coleman accepted the offer and was demoted from grade 23 to grade 18 and transferred to her new position. (Doc. 47, at 1–2; Ex. 7, Doc. No. 62, at 4.)

On November 9, 1987, Candy Young, a white female, was transferred from outside the Division of Vocational Rehabilitation to the position of Staff Development Officer for Rehabilitation, grade 24. (Doc. No. 47, at 5; Doc. No. 49, at 15.) Ms. Young performed some of the responsibilities that Dr. Coleman had previously performed. (Dep. Lee, Doc. No. 42, at 123.)

On November 22, 1988, Dr. Coleman alleges that she became ill and unable to return to work. (Doc. No. 38, at 6.) Dr. Coleman claims that her health deteriorated and her diabetic condition worsened as a result of the stress and humiliation she alleges she suffered as a result of the acts of Defendant. (*Id.;* Doc. No. 49, at 19.)

On December 15, 1988, Dr. Coleman received a Right to Sue letter from the Civil Rights Division of the United States Department of Justice. (Doc. No. 1, at 3.) On March 14, 1989, Dr. Coleman filed her federal lawsuit. (Doc. No. 1.)

Dr. Coleman filed a Motion For Summary Judgment in this action on July 23, 1993, on the issue of Defendant's liability. (Doc. No. 37.) Dr. Coleman filed a Supplemental Motion For Summary Judgment on September 30, 1993, on the issue of damages. (Doc. No. 55.)

On August 20, 1993, Defendant filed a Motion For Summary Judgment. (Doc. No. 45.) Defendant alleges that summary judgment should be granted on the grounds that there is no evidence that Dr. Coleman suffered an unlawful hostile work environment; that Dr. Coleman's hostile work environment and unlawful denial of promotion claims are time-barred because she has alleged no incidents within 300 days of the filing of her EEOC charge; that Dr. Coleman failed to establish a prima facie case of unlawful retaliatory demotion and that, regardless of whether she established a prima facie case, Defendant has offered a legitimate, non-discriminatory reason for its actions; and that Dr. Coleman has erroneously alleged a cause of action under Tenn.Code Ann. § 8–30–320 based on the Assistant Commissioner's alleged failure to consider the existing affirmative action policy when making decisions for the 1987 RIF. (*Id.*, at 15–27.)

On November 18, 1993, this Court heard oral argument from the parties on their respective Motions.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed.1990). .

■ An alleged factual dispute existing between the parties is not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is true, however, that "[i]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Bohn Aluminum*

*& Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir.1962) (citations omitted).

■ To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The court must determine that a reasonable jury would be unable to return a verdict for the non-moving party in order to enter summary judgment. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).

## III. DISCUSSION

### A. Statute of Limitations Issue

Under 42 U.S.C. § 2000e *et seq.*, Title VII of the Civil Rights Act of 1964, it is illegal for an employer to discriminate against any individual with respect to the compensation, terms, or conditions of the individual's employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2. In order for an aggrieved employee to bring a claim under 42 U.S.C. § 2000e, she must first file a timely charge with the EEOC within three hundred days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e) (Supp. 1992).

■ Notably, in circumstances where a complainant is alleging that she has suffered from a pattern of discriminatory conduct, an employer's alleged discriminatory practices may be scrutinized under the "continuing violation doctrine." *See Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823, 826 (6th Cir.1981). Under the continuing violation doctrine, an employer engaging in a pattern of discriminatory conduct is continually violating Title VII. *Id.* Thus, the limitations period commences upon the last discriminatory act, and a complainant who has allegedly suffered a pattern of discrimination may file charges for all acts suffered so long as the last related act occurred within the statutory

period. *Id.* at 826–28; *Held v. Gulf Oil Co.,* 684 F.2d 427, 430 (6th Cir.1982).

■ Defendant State of Tennessee challenges Dr. Coleman's hostile work environment and disparate treatment race and sex discrimination claims on the grounds that they are barred by the applicable 300–day statute of limitations. Specifically, the State of Tennessee argues that none of the alleged acts of discrimination occurred within 300 days of the May 14, 1993, date when Dr. Coleman filed her discrimination charge with the EEOC.

Dr. Coleman alleges that the last act of discrimination occurred on March 18, 1987, when Mr. Lee allegedly told her that the Special Program Unit in Rehabilitation was set up in part to save her and that nobody wanted her in Rehabilitation. However, this Court finds that Dr. Coleman may likewise have alleged that the last act of discrimination occurred in February 1987, when Patsy Mathews, a white female, was promoted to Assistant Commissioner of Vocational Rehabilitation Services.

■ Because the statute of limitations for Dr. Coleman's charge began to run on March 18, 1987, or in February 1987, and as discussed above Dr. Coleman filed a charge with the EEOC on May, 14, 1987, this Court finds that Dr. Coleman satisfied the 300–day statutory filing requirement. Moreover, the Court determines that Dr. Coleman has alleged facts suggesting that the State of Tennessee was engaged in a pattern of discriminatory conduct against her. She states that she was exposed to racist jokes; advised that she was unwanted because of her race and gender; isolated from promotional opportunities due to her race and gender; and unsupported by administrators whose intervention she requested to correct the alleged discriminatory work environment. Under the continuing violation doctrine, Dr. Coleman may bring suit against the State of Tennessee for all acts related to the pattern of discrimination she alleges in her hostile work environment and disparate treatment claims.

### B. Title VII

■ An employee may establish a violation of Title VII by proving hostile work environment, disparate treatment, or retaliation against protected activities. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (hostile work environment); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (disparate treatment); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370 (6th Cir.1984) (retaliation), *cert. denied,* 478 U.S. 1006, 106 S.Ct. 3298, 92 L.Ed.2d 712 (1986).

### 1. Hostile Work Environment

■ The standard governing hostile work environment harassment is the same regardless of whether the harassment is sexual or racial. *Patterson,* 491 U.S. at 179–80, 109 S.Ct. at 2374; *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475, 485 (6th Cir.1989). Accordingly, a plaintiff may establish hostile work environment racial or sexual harassment where she shows harassment which is sufficiently severe or pervasive to alter the conditions, terms, or privileges of her employment and create an abusive working environment. *Patterson,* 491 U.S. at 180, 109 S.Ct. at 2374.

Recently, the Supreme Court refined the standard governing Title VII harassment claims in *Harris v. Forklift Systems,* —— U.S. ——, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The *Harris* Court noted that the mere use of an epithet, though personally offensive to the affected employee, will not implicate Title VII. *Harris,* —— U.S. at ——, 114 S.Ct. at 370. Instead, the conduct must be "severe or pervasive enough to create an objectively hostile work environment," such that a reasonable person would find the environment hostile or abusive. *Id.*

■ Whether a work environment is hostile or abusive requires an inquiry into all the circumstances, including such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with

an employee's work performance." *Harris,* — U.S. at ——, 114 S.Ct. at 369.

In the present case, the Court determines that none of the allegedly objectionable statements made to Dr. Coleman in isolation rise to the level of discriminatory sexual or racial harassment. However, when the statements are coupled with Dr. Coleman's allegations regarding discrimination in promotional opportunities, the Court finds that Dr. Coleman has established a prima facie case of hostile work environment race and sex discrimination. However, given the facts which remain in dispute in this claim, the Court determines that summary judgment would not be appropriate at this time.

### 2. Disparate Treatment and Retaliation

In order to bring a disparate treatment or retaliation case under Title VII, a plaintiff must first establish a prima facie case of race or sex discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093. Then, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Id.,* at 253, 101 S.Ct. at 1093. If defendant succeeds in carrying this burden, the plaintiff must have an opportunity to show that the nondiscriminatory reasons offered by defendant were a pretext for discrimination. *Id.*

A plaintiff may establish pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095. As well, where a defendant has mixed motives, the plaintiff may show that it is more likely than not that a protected characteristic "played a motivating part in [the] employment decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 244, 247 n. 12, 109 S.Ct. 1775, 1787, 1789 n. 12, 104 L.Ed.2d 268 (1989).

### a. Disparate Treatment in Promotional Opportunities

To establish a prima facie case of disparate treatment employment discrimination, a plaintiff must show the following: (1) that she belongs to a protected class; (2) that she applied for and was qualified for a job for which the employer was seeking applicants; (3) that despite being qualified, she suffered an adverse employment decision; and (4) that after her rejection, the position remained open and the employer continued to seek applicants from similarly situated persons outside her protected class. *See Burdine,* 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

The Court finds that Dr. Coleman has established a prima facie case by showing that she is a member of a protected class; that she was qualified for positions which were available; that despite being qualified, she was not promoted; and that after she was passed over Defendant promoted similarly situated white employees. Because Dr. Coleman has established the prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for not promoting Plaintiff.

In its defense, the State of Tennessee initially stated only that Dr. Coleman's allegations regarding promotional opportunities were barred by the 300-day statute of limitations. This Court has already disposed of this defense above. However, at Oral Argument, the State of Tennessee offered as a nondiscriminatory reason for not promoting Dr. Coleman that she failed to comply with the civil service registration necessary to be eligible for the promotions at issue. Because this Court finds a genuine issue of material fact in dispute over whether the State of Tennessee offered promotions in secret or whether it complied with civil service regulations and Dr. Coleman failed to apply for available positions, the Court determines that summary judgment on this claim would not be appropriate at this time.

### b. Retaliation

To establish a prima facie case of discriminatory retaliation, a plaintiff must show the following: 1) that she was engaged in activity protected by Title VII; 2) that she

suffered an adverse employment decision; and 3) that there exists a causal link between her protected activity and the adverse action of her employer. *Jackson,* 743 F.2d at 375.

■ Dr. Coleman has established the prima facie case by showing that she was engaged in the protected activity of filing a discrimination charge with the EEOC and the THRC on May 14, 1987, and May 29, 1987, respectively; that subsequently she suffered an adverse employment decision in being advised that her position was being eliminated, and then being demoted from grade 23 to grade 18; and that a link exists between the two in that although Dr. Coleman's job was never targeted for elimination in three drafts of the RIF plan written prior to the filing of her discrimination charge, Dr. Coleman's job was targeted immediately after she filed her charge.

■ The State of Tennessee has offered as a nondiscriminatory reason for demoting Dr. Coleman that it did so solely because she was the least senior person in her grade classification. Dr. Coleman does not challenge the State of Tennessee's assertion regarding her relative seniority. However, this Court is persuaded that the State of Tennessee's proffered rationale for demoting Dr. Coleman is likely pretextual.

The Court determines that a material issue of fact remains as to whether the State of Tennessee was unaware of the differences in seniority when drafting three prior plans, but suddenly became aware of differences in seniority after Dr. Coleman filed a discrimination charge. As well, the Court notes that a material issue of fact exists as to whether the State of Tennessee substantially replaced Dr. Coleman after her demotion with a less-qualified white woman. Accordingly, the Court finds that summary judgment on this claim is not appropriate at this time.

C. Tenn.Code Ann. § 8–30–320:

In abolishing the positions of Tennessee civil service employees, employers must follow the mandate of Tenn.Code Ann. § 8–30–320. The statute thus provides in relevant part:

... (a)(2) In determining the order of layoffs, departmental and total state service shall be the predominant factors.... Performance ratings may be considered in a manner prescribed by rule in determining the order of layoff only when the seniority calculations produce an order of layoff difference of less than one (1) year. Provided, however, nothing in the preceding sentence shall be construed to prevent the precedence of any affirmative action program or goal which may be implemented by a state agency.

Dr. Coleman alleges that the State of Tennessee violated Tenn.Code Ann. § 8–30–320 by not considering the applicable affirmative action policy before deciding to eliminate her position in the June, 1987, RIF.

■ Although this Court has found no cases which directly address the importance of affirmative action policies in Tennessee civil service layoff decisions, the Court finds from a plain reading of the statute that Tenn. Code Ann. § 8–30–320 does not require an employer to take an affirmative action policy into account over seniority. As well, the Court determines that the language of § 8–30–320 only instructs that nothing in the statute prevents employers from taking affirmative action policies or goals into account when making decisions. Thus, although the State of Tennessee's failure to consider its affirmative action policies before demoting its only black professional in the Division of Vocational Rehabilitation may implicate its alleged pattern of racial hostility toward Dr. Coleman, it does not of itself violate Tennessee law. The Court grants summary judgment on this claim.

IV. CONCLUSION

For the reasons set forth above, the Court hereby DENIES Plaintiff's Motion For Summary Judgment and DENIES Plaintiff's Supplemental Motion For Summary Judgment. Furthermore, the Court DENIES Defendant's Motion For Summary Judgment on Plaintiff's claim that Defendant discriminated against Plaintiff in violation of Title VII under theories of hostile work environment, disparate treatment, and retaliation. The Court GRANTS Defendant's Motion For

Summary Judgment on Plaintiff's claim that Defendant violated Tenn.Code Ann. § 8-30-320.

An Order consistent with the foregoing reasoning will be entered contemporaneously with this Memorandum.