**Julia B. YOUNG, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

No. 92–2722.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 15, 1994.

Ron W. McAfee, Martin Tate Morrow & Marston, Memphis, TN, for plaintiff.

Tom L. Henderson, McKnight Hudson Lewis & Henderson, Memphis, TN, for defendant.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GIBBONS, Chief Judge.

Before the court is the motion of defendant, State Farm Automobile Insurance Company (State Farm or defendant), for summary judgment. Plaintiff, Julia Young, filed this action alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Tennessee Human Rights Act (THRA), Tenn.Code Ann. §§ 4–21–407 and 4–21–301. Plaintiff also alleges a cause of action for malicious harassment pursuant to Tenn.Code Ann. § 4–21–701. Defendant filed this motion arguing that plaintiff has failed to state a cause of action for malicious harassment and that it is entitled to summary judgment on plaintiff's age discrimination and retaliation claims. Additionally, defendant argues that some of

plaintiff's claims are barred for failure to exhaust administrative remedies and/or failure to comply with applicable statutes of limitation. For the reasons set forth below, defendant's motion is granted in part and denied in part.

The record on the motion for summary judgment discloses the following relevant disputed and undisputed background facts.[1] Defendant hired plaintiff on September 21, 1987, for the clerical position of Claim Service Assistant. Under defendant's system of rankings for clerical employees, plaintiff was classified as a C–3 level employee at the time of her employment.[2] Plaintiff was forty-seven years old at the time she was hired.

Plaintiff initially worked for defendant in its White Station office in Memphis, Tennessee. At White Station, plaintiff was under the supervision of Larry Gossett. Gossett recommended plaintiff for a merit salary increase in 1988 and 1989. Gossett also wrote a favorable evaluation of plaintiff in regard to her 1989 merit salary increase.

In April 1990, plaintiff voluntarily transferred from the White Station office to defendant's new Colonial office, also in Memphis.[3] Plaintiff's new supervisor at the Colonial office was Mary Humphrey. Sometime in the early Spring of 1990, plaintiff discussed the possibility of a promotion to C–4 level with Humphrey. Both parties agree that promotion of a clerical employee is the responsibility of the employee's immediate supervisor. Before completing plaintiff's annual salary review, however, Humphrey was transferred to another location. Humphrey sent plaintiff a note prior to her departure stating that if plaintiff continued to work hard and with a positive attitude, "I'm sure you will not have any problems getting promoted."

Upon Humphrey's departure, David Sharpe, the Claim Superintendent at the Colonial office, temporarily took over Humphrey's position of supervising the clerical employees. In August of 1990, Sharpe considered plaintiff for a promotion to the c–4 level. At an initial meeting to discuss the promotion, Sharpe presented plaintiff with a Salary Change Recommendation form. The form stated that plaintiff handled her duties with a good attitude, did quality work. and that her attendance was acceptable.

In a later meeting to discuss plaintiff's Performance Planning and Review (PPR), however, Sharpe informed plaintiff that he had decided against promoting her to the c–4 level. Sharpe told plaintiff that he discussed the possibility of her promotion with her past supervisors and that some of them had favored her promotion while others could not remember enough about her work to help with the decision. Sharpe also indicated in a memorandum on the subject that Humphrey had indicated that she "would go with the promotion." Sharpe then denied plaintiff a promotion to C–4 level, however, indicating that, in his opinion, her attendance record did not support a promotion.

Sharpe met with plaintiff again on September 7, 1990 to discuss her objections to his desire to put language into her PPR stating that plaintiff needed to improve her attendance record. Plaintiff then approached Wil-

**1.** Additional disputed and undisputed facts will be discussed as they are relevant to plaintiff's individual claims. The court will note here that defendant's Reply to Plaintiff's Opposition to Summary Judgment asks the court to treat defendant's submitted list of "uncontested facts" as the undisputed facts for purposes of this motion. Defendant submitted a list of allegedly "uncontested facts" pursuant to Local Rule 11(d)(2) with its motion for summary judgment. With its response to defendant's motion, plaintiff submitted a response to these "uncontested facts," either admitting or denying each numbered fact and sometimes adding additional text. Defendant now argues that, because plaintiff failed to "affix[ ] to the response copies of the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue," as required by Local Rule 11(d)(3), plaintiff's opposition to defendant's "uncontested facts" should not be considered. Defendant is hardly in a position to make this request, however, as defendant's list of "uncontested facts" violates Local Rule 11(d)(2) in the same manner that plaintiff's response violates the rule. Defendant's request is, therefore, denied.

**2.** Plaintiff previously worked for State Farm for three years in the early 1960's. According to plaintiff, she has a seniority date of July 9, 1984, in recognition of those prior three years.

**3.** Defendant's Colonial office is also referred to in the record as the Bartlett office.

bur Noel, who became plaintiff's supervisor in September or October 1990. Noel replaced the reference to which plaintiff objected and replaced it with a statement that plaintiff, "[b]e prepared and ready to work at 8:30 AM." On September 12, 1990, plaintiff submitted a formal request for promotion to Noel.

Following plaintiff's formal request for promotion, plaintiff attended a meeting with Noel, Sharpe and James Dodge, the Divisional Claims Superintendent. At this meeting, plaintiff expressed her displeasure at not being promoted and discussed the possibility of using State Farm's Open Door Policy.[4] After the meeting, Dodge forwarded a memorandum to his superior, John Rodgers, indicating that plaintiff had been urged to wait until her next review by Noel for a promotion, but that plaintiff had opted to argue for a promotion presently. Plaintiff then continued to discuss her displeasure with Noel until she was informed by Rodgers that he agreed with the decision to not promote her to C–4.

In the time period following this meeting, plaintiff alleges that she was assigned various tasks in order to prove her worth and that other clericals were not required to undertake these tasks. On November 30, 1990, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Tennessee Human Rights Commission (THRC). This charge alleged that plaintiff had been denied a promotion to Superintendent Secretary in April 1990 on the basis of age and that plaintiff had been denied a promotion to the C–4 position based on her age on September 7, 1990.

On January 22, 1991, Noel met with plaintiff to discuss his decision to not recommend her for a promotion to C–4 once again. Noel stated that he had considered plaintiff for the promotion, but had not found her ready. According to Noel, plaintiff was not meeting the goal of being in the office and ready to work by 8:30 a.m. Noel also indicated to

plaintiff that she was spending an excessive amount of her work time making personal telephone calls.

In this same month, plaintiff filed a second charge of discrimination with the EEOC and the THRC, alleging that defendant had retaliated against her by not promoting her to a C–4 in December 1990. The charge also alleged that defendant had promoted younger clericals, not within the protected age group, to the C–4 position.

Noel remained plaintiff's supervisor throughout the first nine months of 1991. In September of that year, Noel recommended plaintiff for a merit salary increase but not for a promotion. The Salary Change Recommendation form related to the salary increase stated that plaintiff was not being promoted because she needed to improve her efficiency in her daily work.

Later in September of 1991, Donna Hay Riley succeeded Noel as plaintiff's supervisor. Riley was aware upon taking that position that plaintiff had filed charges of discrimination and retaliation with the EEOC. Riley testified in her deposition that she initially assessed plaintiff's work performance as adequate, but that her opinion slowly changed. Plaintiff alleges that Riley took several adverse employment actions against her including surveillance, requesting that plaintiff sign untrue memoranda concerning plaintiff's work behavior and adding new goals to her PPR.

On September 27, 1991, the EEOC issued a determination that the evidence concerning plaintiff's denial of promotions did not indicate that age motivated the decisions to not promote her. On November 19, 1991, however, the EEOC issued a Notice of Intent to Reconsider the Letter of Determination.

In April 1992, Riley conducted an interim review of plaintiff's PPR and stated that plaintiff was "not on goal" for the target goal of being prepared and ready to work at 8:30 a.m. According to plaintiff, who disagreed with this assessment, Riley also attempted to

---

**4.** State Farm's Open Door Policy is a procedure under which State Farm employees who have any sort of problem may pass one or more levels of supervision to speak with the managerial person of their choice about the problem. Defendant's description of the Open Door Policy states that one of its purposes lies in allowing employees to complain about problems such as discrimination without any fear of reprisal.

add new goals to the PPR concerning plaintiff's attitude and use of work time to conduct personal business. Plaintiff then refused to sign a memorandum outlining the new goals, stating that the goals were inaccurate.

On May 14, 1992, plaintiff filed a third charge with the EEOC and THRC. In this charge, plaintiff alleged that she had been threatened with dismissal, subjected to more stringent work standards than other employees and required to attend numerous meetings concerning her attitude and work performance in retaliation for filing previous EEOC complaints. Also in this charge, plaintiff alleged that defendant was improperly processing two automobile insurance claims submitted by plaintiff and her husband in retaliation for her having filed previous EEOC charges.

On May 28, 1992, the EEOC held a fact-finding conference and heard testimony from various individuals in this case. Following this conference, defendant's general counsel sent a letter to the EEOC stating that plaintiff would not be allowed to coerce State Farm into granting her a promotion. In August 1992, however, plaintiff was approved for a promotion to C–4. On September 1, 1992, the same day that defendant's general counsel informed the EEOC of plaintiff's promotion, the EEOC issued a determination that no evidence of age discrimination was present in relation to plaintiff's first EEOC charge based on denials of promotions. The EEOC did find, however, that reasonable grounds existed to indicate that defendant had retaliated against plaintiff for complaining about non-promotions. Three days later, plaintiff initiated this action.

**I. *Procedural Issues.*** Defendant presents several arguments for the dismissal of various of plaintiff's claims. Defendant first argues that plaintiff may not litigate the allegations of age discrimination in relation to any of the adverse employment decisions alleged in her complaint other than those specifically mentioned in plaintiff's first EEOC charge. Because the court grants

defendant summary judgment on all of plaintiff's age discrimination claims, the court need not address this argument.

Defendant next argues that all of plaintiff's claims under the THRA that arose prior to September 4, 1991 must be dismissed. The court ruled upon this same argument in its March 2, 1993 order on defendant's motion to dismiss. No need exists to rehash those same arguments again.[5]

Plaintiff's response to defendant's motion requests that the court reinstate her THRA claims with respect to the denial of promotion claims. Plaintiff argues that she has now presented sufficient evidence of continuing violations on those claims. A response to a motion for summary judgment is not the proper place to seek reinstatement of dismissed claims. Plaintiff could have and should have made this argument in response to defendant's original motion to dismiss.

Defendant's last procedural argument is that, if the Civil Rights Act of 1991 applies to this case, plaintiff's failure to promote claims of April 1990, September 1990, and December 15, 1990 must be dismissed for failure to file suit within 90 days of receipt of a right to sue letter. Defendant's argument is without merit. First, the Civil Rights Act of 1991 does not apply to these claims, and, to the court's knowledge, no party has argued otherwise. Second, plaintiff received a final EEOC determination on her first EEOC charge on September 2, 1992. Plaintiff filed this action within a few days of receipt of that letter.

**■ II. *Malicious Harassment Claim.*** Defendant moves to dismiss plaintiff's cause of action for malicious harassment for failure to state a claim. Under Tenn.Code Ann. § 4–21–701:

(a) In addition to the criminal penalty provided in § 39–17–313 [repealed], there is hereby created a civil cause of action for malicious harassment.

(b) A person may be liable to the victim of malicious harassment for both special and

---

5. In the March 2, 1993 order on defendant's motion to dismiss, the court dismissed plaintiff's THRA claims with respect to each alleged failure to promote. The court ruled that plaintiff has

sufficiently pled continuing violations with respect to her other allegations of adverse employment actions and declined to dismiss those claims.

general damages, including, but not limited to, damages for emotional distress, reasonable attorney's fees and costs, and punitive damages.

This statute was enacted in 1990 as reproduced above. In 1991, the statute section referenced was changed to § 39–17–309. In the 1992 supplement to the Tennessee Code, however, the cross-reference was returned to § 39–17–313 [repealed]. As the Code Commission notes in the 1993 supplement state:

This section originally contained a reference to § 39–17–313. During the 1991 replacement of Volume 2A the publisher was instructed to change the reference from § 39–17–313 to § 39–17–309 since § 39–17–313 was repealed; however, that instruction has been superseded and the section returned to the original language.

Section 39–17–313, referred to in this section, was repealed by Acts 1990, ch. 984.

Accordingly, there is a question as to what section of the Tennessee criminal code provides the underlying framework for a civil cause of action for malicious harassment.

Defendant argues that Tenn.Code Ann. § 39–17–308, a criminal section making it illegal to threaten persons over the telephone, provides the basis for the civil cause of action for malicious harassment because that section is entitled "Harassment." Defendant's argument is without merit. There has never been a reference to T.C.A. § 39–17–308 in connection with section 4–21–701.

Plaintiff, on the other hand, argues that section 39–17–309 provides the underlying cause of action for malicious harassment despite the current contrary language of 4–21–701. Section 39–17–309 criminalizes "Civil Rights Intimidation." While section 4–21–701 at one time cross-referenced § 39–17–309 as the underlying criminal offense on which the malicious harassment cause of action is based, plaintiff's argument fails to account for the Code Commission's instructions to return the cross-reference in section 4–21–701 to § 39–17–313 [repealed]. Because, however, the court concludes that plaintiff has failed to state a cause of action under either § 39–17–313 or § 39–17–309, the court need not decide which statute provides the underlying framework for the tort of malicious harassment.

Prior to its repeal, section 39–17–313 provided *inter alia:*

(a) The general assembly finds and declares that it is the right of every person regardless of race, color, ancestry, religion or national origin, to be secure and protected from fear, intimidation, harassment, and physical harm caused by the activities of groups and individuals. It is not the intent of this section to interfere with the exercise of rights protected by the constitution of the United States. The general assembly recognizes the constitutional right of every citizen to harbor and express beliefs on any subject whatsoever and to associate with others who share similar beliefs. The general assembly further finds that the advocacy of unlawful acts by groups or individuals against other persons or groups for the purposes of inciting and provoking damage to property and bodily injury or death to persons is not constitutionally protected, poses a threat to public order and safety, and should be subject to criminal sanctions.

(b) It is unlawful for any person knowingly to intimidate or harass another person because of that person's race, color, religion, ancestry or national origin, to:

(1) Cause physical injury to another person;

(2) Damage, destroy or deface any real or personal property of another person; or,

(3) Threaten, by word or act, to do the acts prohibited if there is reasonable cause to believe that any of the acts described in subdivisions (b)(1) and (2) will occur. . . .

Clearly, plaintiff has failed to state a cause of action under this section. The section offers no protection from harassment on the basis of age. Furthermore, the plain meaning of this statute is to criminalize behavior much more serious than any actions alleged on the part of defendant in plaintiff's complaint.

If in fact, section 39–17–309 is, as plaintiff argues, the section of the Tennessee Code intended by the General Assembly to provide the basis for the civil tort of malicious harassment, plaintiff still does not state a

claim for malicious harassment. Subsection (a) of section 39–17–309 is identical to subsection (a) of 39–17–313 [repealed] as set out above. Plaintiff relies on subsection (b)(2) of this section, which provides:

> (b) A person commits the offense of intimidating others from exercising their civil rights who:
>
> (2) Injures or threatens to injure or coerces another person with the intent to unlawfully intimidate another because that other exercised any right or privilege secured by the constitution or laws of the United States or the constitution or laws of the state of Tennessee.

Tenn.Code Ann. § 39–17–309(b)(2).[6]

Subsection (a) of section 39–17–309 does not mention age under its declaration of rights. Furthermore, like the repealed section 39–17–313, this section contains language indicating a purpose of protection from serious injury or threat of injury for exercising civil rights. Assuming that defendant's alleged treatment of plaintiff was intended to intimidated her because she exercised her statutory rights, defendant's conduct does not amount to injury, a threat of injury or coercion within the meaning of the statute.[7]

**III.** *ADEA and THRA Claims.* Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.Rule Civ.Pro. 56(c). The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

When confronted with a properly-supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party opposing the motion must "do more than simply show that there is some meta-physical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). In short, the nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A. *The Age Discrimination Claims.* In order to prevail in an age discrimination case, a plaintiff must show that age was "a determining factor" in the adverse employment decision. *Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993); *Moody v. Pepsi–Cola Metro. Bottling Co., Inc.,* 915 F.2d 201, 208 (6th Cir.1990). Whether age played a factor in plaintiff's termination is the "ultimate issue" and plaintiff bears the ultimate burden of this showing. *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir. 1982).

---

**6.** Plaintiff obviously intends to argue that the underlying rights she exercised that allegedly led to defendant's coercion and intimidation were rights secured by federal and state law, namely the ADEA and THRA.

**7.** In fact, by arguing that defendant's alleged conduct is actionable under this section, plaintiff essentially argues that defendant's alleged actions amount to criminal behavior. Plaintiff argues that the following alleged behavior establishes her claim of malicious harassment:

putting confidential memos relating to the Open Door Policy in her Shield, ma[king] false accusations against her, search[ing] her desk, solicit[ing] other employees to watch her, subject[ing] her to spur of the moment meetings, and otherwise treat[ing] [plaintiff] in a manner different from other secretarial employees in order to intimidate, harass, and punish her for having exercised her civil rights.

Plaintiff's Response to Defendant's Motion for Summary Judgment at 21. This behavior, even if true, simply does not constitute a violation of section 39–17–309.

The United States Court of Appeals for the Sixth Circuit has generally held that the traditional approach for proceeding under an employment discrimination claim as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies in ADEA cases in this Circuit. Under this test, the plaintiff carries the initial burden of proving a *prima facie* case of age discrimination by a preponderance of the evidence. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1159 (6th Cir.1990).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason for its decision." *Id.* at 1162 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). If the employer offers such a legitimate, non-discriminatory reason, the plaintiff carries the burden of proving that the proffered reason was a pretext for discrimination. *Id.* In order to show that the proffered reason is a pretext for discrimination, the plaintiff must show "both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, — U.S. —, —, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993) (emphasis in original).

Plaintiff alleges age discrimination in the following employment actions: denial of promotion to Superintendent Secretary in April 1990, denial of promotion to C–4 from September 1990 until August 1992, and various allegedly adverse employment actions such as increased workload and surveillance. The court addresses these claims as follows.

■ **1. *Denial of promotion to Superintendent Secretary.*** Plaintiff alleges that she was denied a promotion to Superintendent Secretary in April 1990 on the basis of her age. In order to make out a *prima facie* case of age discrimination in a denial of promotion claim, a plaintiff may establish that (1) she is a member of a protected group, (2) she was qualified for the promotion, (3) she applied for and was denied the promotion and (4) the person actually promoted was not a member of the protected group. *Bundy v. Jackson*, 641 F.2d 934, 951

(D.C.Cir.1981). *See also McDonald,* 898 F.2d at 1160.

■ Defendant argues that plaintiff cannot establish a *prima facie* case on this claim because she cannot demonstrate that she was qualified for the position. Plaintiff has failed to mention this claim in her response to the motion for summary judgment, and appears to have abandoned it. In any event, plaintiff has put forth no evidence that indicates that she was qualified for the position of Superintendent Secretary. Accordingly, plaintiff cannot establish a *prima facie* case on this claim. Moreover, while defendant puts forth a legitimate, non-discriminatory reason for denying plaintiff the promotions—the greater experience of those who received the two Superintendent Secretary openings. Plaintiff has presented no evidence of pretext or age-based discrimination in connection with the filling of these positions.

**2. *Denial of Promotion to C–4.*** Plaintiff further alleges that she was constantly denied a promotion to the C–4 level of clerical employee on the basis of age. Because the court determines that plaintiff cannot establish a *prima facie* case of age discrimination in relation to defendant's refusal to promote her to C–4, defendant is entitled to summary judgment on those claims.

Plaintiff's non-promotion to C–4 does not fit into the formula for establishing a *prima facie* case set forth in relation to plaintiff's claim based on the denial of promotion to Superintendent Secretary. Plaintiff contends, and defendant does not challenge her contention, that promotion to C–4 is a linear progression. Accordingly, unlike a promotion to a position in which several persons compete for the one position, promotion to C–4 level is a non-competitive promotion that occurs whenever a clerical's supervisor sees fit to recommend the promotion. Accordingly, plaintiff's claim of a discriminatory denial of such a promotion does not fit into an analysis based on competitive promotions.

■ The United States Court of Appeals for the Sixth Circuit, however, has held that a plaintiff may establish a *prima facie* case of age discrimination by showing that a "comparable non-protected person was treated bet-

ter." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (6th Cir.1992). To make such a showing, a plaintiff must establish (1) that she was a member of a protected class and (2) that for the same or similar conduct she was treated differently than similarly-situated non-protected persons. *Id.* Plaintiff's age discrimination claim based on defendant's refusal to promote her to C–4 fits this formulation of the *prima facie* case well; plaintiff's claim on this issue turns on her argument that she was constantly denied a promotion to C–4 while younger clericals with the same or less qualifications were promoted to C–4 in less time than older clericals.

With respect to this claim, plaintiff offers the following evidence. First, plaintiff offers her own affidavit testimony that younger clerical employees at State Farm were quickly promoted while older clerical employees were required to wait longer for promotions. Plaintiff further states in her affidavit that only one clerical employee over the age of forty was promoted at State Farm in the three years prior to plaintiff's filing of EEOC complaints. Plaintiff's affidavit also alleges that Noel, her supervisor from the fall of 1990 to the fall of 1991, promoted two clericals over age forty immediately following plaintiff's filing of her first EEOC charge and that these employees were not expecting a promotion. Finally, plaintiff's affidavit alleges that James Dodge actively pushed for the promotion of a clerical employee in her thirties even though he was not her supervisor.

In addition to her own affidavit, plaintiff presents the affidavit of Elizabeth Wright, a field adjuster for State Farm. Wright's affidavit states that she worked with plaintiff in both the White Station and the Colonial office. Wright's affidavit contains two statements that are relevant to plaintiff's claim that her non-promotion to C–4 secretary was motivated by age discrimination:

1) In my opinion, State Farm did not promote Julia Young in 1990 or 1991 because of her age and because she filed an EEOC charge of discrimination.

2) It is well-known in the office, and in my opinion, that State Farm management pre-

fers younger women to older women for secretarial positions.

As further evidence that age discrimination motivated defendant's refusal to promote plaintiff, she offers the transcribed testimony of two witnesses from the EEOC hearing. The first, former State Farm Claims Specialist Janett Holiday, states:

I believe Julia was not promoted because she was pushing for it. She let it be known that she was not satisfied with not being promoted. I also believe her age was a factor.

The second EEOC statement offered by plaintiff, that of State Farm Claims Adjuster Richard Sweat, states,

from my standpoint, I believe her age had something to do with her not being promoted.

Finally, plaintiff offers a chart which allegedly demonstrates that younger clericals in the office were promoted despite their having worse attendance records than plaintiff.

Plaintiff's evidence that she was denied promotions on the basis of age is insufficient to create an issue of fact as to whether she was denied the promotions "under circumstances which give rise to an inference of age discrimination." *Ridenour v. Lawson Co.*, 791 F.2d 52, 55 (6th Cir.1986) (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093–94). Plaintiff's evidence essentially amounts to her personal belief, and that of her co-workers, that she was discriminated against on the basis of age. Conclusory allegations of discrimination are insufficient to withstand a motion for summary judgment. *Mitchell*, 964 F.2d at 585–85. *See also, Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir.1994) (four affiants personal belief that police officer carried out search in illegal manner has no probative force to prove that the officer actually did so); *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 7 F.3d 1203, 1206 (5th Cir.1993) ("conclusory allegations supported by conclusory affidavits will not suffice to require a trial.... even if the movant cannot demonstrate contrary facts by specific affidavit recitation to rebut the conclusory allegations") (citations omitted); *O'Shea v. Detroit News*, 887 F.2d 683, 688 (6th Cir.1989) (statements of plaintiff's co-workers that employer

made shift assignments to unpopular shift on the basis of age are insufficient to create factual issue that would preclude summary judgment for defendant).

■ The statement in Wright's affidavit that it is well known that the State Farm management prefers younger women for clerical positions is also insufficient to aid plaintiff's attempt to demonstrate a *prima facie* case. Under Fed.R.Civ.P. 56(e), affidavits must be made on personal knowledge and demonstrate that the affiant is competent to testify to the facts outlined. Wright's affidavit makes no showing with respect to either requirement.

Furthermore, even if the court could properly consider the affidavit on this point, most of its contents do not support plaintiff's claim. As the *Mitchell* court stated, "rumors, conclusory allegations and subjective beliefs ... are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell, supra,* 964 F.2d at 585 (citations omitted). In short, plaintiff must point to some factual support in the record behind her and her co-workers' allegations of age discrimination. *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993) ("self-serving affidavits without factual support in the record will not defeat a motion for summary judgment") (citing *Kornacki v. Norton Performance Plastics,* 956 F.2d 129 (7th Cir.1992)).

Plaintiff argues that she has presented "objective evidence" of age discrimination that supports her required *prima facie* case showing. Plaintiff's objective evidence amounts to her affidavit statement of the "fact" that "younger personnel at State Farm were quickly promoted while older clerical employees waited longer or were denied promotions."

In order to establish a *prima facie* case of discrimination by showing that he or she was treated differently from similarly-situated non-protected employees, a plaintiff must show that:

> the individuals with whom the plaintiff seeks to compare his/her treatment ... have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell, supra,* 964 F.2d at 583. Plaintiff has provided no evidence to support a finding that similarly situated employees under forty were treated differently. In fact, plaintiff has not even, with the exception set forth below, named any of these younger and older clericals or provided any evidence on which the court could base a comparison.

Plaintiff has created one chart that shows the ages and promotion times for four clerical employees.[8] This chart is the only probative evidence in the record relating to plaintiff's claims that several young clericals with qualifications similar to plaintiff and less than six months experience are promoted constantly. However, only one person on this chart was promoted in less than one year's time, one thirty year old clerical employee was promoted in exactly one year's time and the remaining two clericals on the chart, Rebecca McClarty and Amy Crippen, who at age twenty-eight is the youngest person listed, were promoted in three and four years respectively. Even in regard to these employees, plaintiff has provided no evidence

---

8. Plaintiff actually created this chart for the purposes of demonstrating that State Farm's proffered reasons for denying her a promotion to C–4 in September 1990 on the basis of her attendance record was pretextual. However, for reasons made obvious above, the chart is relevant to plaintiff's ability to demonstrate a *prima facie* case of age discrimination. The chart appears as below:

CLERICALS WITH COMPARABLE ATTENDANCE RECORDS PROMOTED BEFORE 9/92

| Name | Date Hired | Date Promoted | Age | Promoted To: | Incidents Of Absences |
|------|-----------|---------------|-----|--------------|----------------------|
| Amy Crippen | 1/87 | 1/91 | 28 | C4 | 10 |
| Debra Sue Gladney | 10/89 | 4/90 | 30 | C3 | 18 (4PL) |
| Rebecca McLarty | 2/87 | 2/90 | 29 | C4 | 15 (1PL) |
| Pamela Tracy | 10/88 | 10/89 | 37 | C4 | 19 (1PL) |

about the circumstances of these promotion decisions—for example, what supervisor made the decision—or the qualifications of the clerical employees listed.

Plaintiff's only other "objective evidence" amounts to her claims in her affidavit that State Farm had only promoted one person over age forty prior to plaintiff's filing of EEOC charges and that plaintiff knows of one clerical employee who has been with State Farm for many years and not received a desired promotion to C–4. The affidavit fails to establish personal knowledge of the first allegation, and her knowledge of an employee who has not been promoted, given the lack of any other information about this employee and her employment situation does not support plaintiff's burden.

Plaintiff's evidence, both subjective and objective, fails to create any issues of material fact as to whether plaintiff has established a *prima facie* case. Moreover, even if plaintiff had submitted evidence from which a *prima facie* case could be found she has produced no evidence from which the court can find defendant's proffered reasons are a pretext for discrimination. *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2752; *Galbraith v. Northern Telecom, Inc.*, 944 F.2d 275, 282–82 (6th Cir.1991) (plaintiff who demonstrates pretext still cannot prevail because of his failure to show that the pretext masked discriminatory intent). Accordingly, defendant's motion for summary judgment on plaintiff's claim of age discrimination in defendant's refusal to promote her is granted.

**3. *Adverse treatment on the basis of age.*** Finally, plaintiff alleges that she was discriminated against on the basis of age by being subjected to various adverse employment actions including more stringent work standards, increased monitoring, attempts to make her sign erroneous documents and defendant's purposeful mishandling of her automobile claims. In her response to the motion for summary judgment, however, plaintiff failed to address any of these claims and apparently has abandoned them. Additional-

ly, the court finds no issues of fact as to whether age motivated any on the allegedly adverse employment actions taken by defendant towards plaintiff. Accordingly, defendant is granted summary judgment on those claims as well.[9]

**B. *The Retaliation Claims.*** Section 4(d) of the ADEA provides in pertinent part:

It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(d). Although the language of the statute refers to employer "discrimination" for exercise of protected rights, courts refer to these claims as "retaliation" claims. *See EEOC v. Board of Governors of State Colleges and Univ.*, 957 F.2d 424, 427 n. 4 (7th Cir.1992).

▆ Absent direct evidence of retaliation, courts generally apply a modified version of the *McDonnell Douglas* test to determine if a plaintiff has established a prima facie case of retaliation. Under this formula, a plaintiff must make a prima facie showing that (1) he engaged in ADEA protected conduct, (2) he was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the protected conduct and the adverse action. *Mesnick v. General Electric Co.*, 950 F.2d 816, 827 (1st Cir.1991). In the context of a Title VII retaliation case, the Sixth Circuit has stated that, "[p]laintiff's burden with respect to establishing a prima facie case is not onerous. He need only introduce evidence from which an inference can be drawn that he would not have been [subject to adverse employment action] had he not filed discrimination charges." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir.1984) (citations omitted).

Once the plaintiff has made out a prima facie case, the usual burden shifting analysis

---

9. Because the court grants summary judgment on these claims, the court need not presently address defendant's argument that its behavior did not amount to adverse employment action. The court discusses that issue *infra* in relation to plaintiff's claims of retaliation.

of ADEA and Title VII cases applies; defendant must then articulate a legitimate, nonretaliatory reason for its employment decision. *Id.* If the defendant meets this burden, then the plaintiff still carries the ultimate burden of establishing that the reasons given are a pretext for retaliation. *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992); *West v. Fred Wright Constr. Co.,* 756 F.2d 31, 34 (6th Cir.1985).

■ **1. *Denial of Promotion to C–4.***
Plaintiff has alleged retaliation in defendant's refusal to promote her to C–4 after she filed a charge alleging age discrimination in defendant's refusal to promote her in September 1990. Plaintiff has demonstrated that she is a member of a protected class, that she engaged in protected activity and that she thereafter suffered an adverse employment action. Thus, if plaintiff can demonstrate at least an issue of fact as to a causal connection between the adverse action and her EEOC complaints, she has met her burden of establishing a *prima facie* case.

The court finds that there are material issues of fact in the record that, if determined in plaintiff's favor, would support a *prima facie* case of retaliation. First, there is the July 15, 1992 letter from State Farm general counsel, Dale Block, to the EEOC. In that letter, Block discusses some of plaintiff's allegations with the EEOC. Towards the end of the letter, Block indicates that plaintiff's pursuit of EEOC filings will not help her receive a promotion. He states, "[w]hatever her motivations, her actions will not succeed in extorting from State Farm an undeserved promotion or other relief."

Plaintiff has also demonstrated a material issue of fact as to whether State Farm management strongly dissuaded her from engaging in "Open Door" review of her allegations. Additionally, plaintiff's evidence that she was intimidated and harassed in meetings with management to discuss her desire for a promotion create issues of fact that support her *prima facie* showing.[10] Based on these disputed issues of fact, a reasonable trier of fact

could infer a retaliatory animus on the part of defendant. The trier of fact could then reasonably link such a retaliatory animus with defendant's failure to promote plaintiff. Accordingly, the court finds that plaintiff has produced sufficient evidence to create genuine issues of fact as to whether she can establish a *prima facie* case of retaliation in defendant's refusal to promote her to C–4.

Defendant argues that even if plaintiff can establish a *prima facie* case of retaliation, she cannot demonstrate pretext in defendant's proffered legitimate, non-discriminatory reasons for not promoting plaintiff to C–4 until August 1992. Defendant has proffered several such reasons, most of which focus on the perceptions of plaintiff's supervisors during the time in question, Noel and Riley, concerning plaintiff's work ethic, attitude and punctuality. The court need not discuss defendant's proffered reasons in detail, however, because it finds that plaintiff has demonstrated the existence of issues of fact as to whether defendant's proffered reasons are pretextual.

It is undisputed that a State Farm clerical's immediate supervisor is responsible for determining if that clerical receives a promotion. Plaintiff alleges that Noel at one point told her that he would recommend her for a promotion. According to plaintiff, Noel then changed his mind and told her that the decision as to whether or not she would receive a promotion rested with Dodge and Sharpe. Plaintiff alleges that Noel told her this after he had become her supervisor. Furthermore, plaintiff has introduced several electronic mail messages between Noel and herself in which Noel indicates that plaintiff should back off of her quest to receive her promotion for a while.

Plaintiff has also introduced evidence establishing issues of fact as to whether Riley, who replaced Noel as her supervisor, had been informed by management of plaintiff's EEOC complaints. Plaintiff also introduced evidence that Riley conducted her reviews of plaintiff with Sharpe present. Finally, plain-

---

**10.** Given that defendant's motion for summary judgment primarily argues that these events do not constitute adverse employment action, rather than denying that the events took place, plain-

tiff's affidavit creates material issues of fact as to whether these events occurred and occurred as she relates them.

tiff has demonstrated issues of fact that suggest Sharpe and other top management personnel played a significant role in the promotion and non-promotion of plaintiff.

Given this evidence, a genuine issue of fact exists as to whether or not upper management, specifically Rodgers, Dodge and Sharpe, were actually determining whether or not plaintiff would be granted a promotion. This issue of fact precludes summary judgment for defendant for two reasons. First, State Farm steadfastly maintains several times in the record that the decision as to whether a clerical employee will be promoted remains with that employee's immediate supervisor. Second, the court has already determined that plaintiff has demonstrated evidence permitting an inference of retaliatory motive on the part of State Farm management. Thus, if State Farm management persisted in deciding plaintiff's eligibility for a promotion, an issue of fact exists as to whether they denied her a promotion in retaliation for filing EEOC complaints.[11]

**2. *Remaining Claims of Retaliatory Action.*** Plaintiff's remaining claim of retaliation alleges various retaliatory actions on the part of defendant. In her third EEOC complaint, plaintiff alleged retaliation in the form of the following alleged adverse employment actions: subjecting her to numerous meetings in which she was asked to sign erroneous documents regarding her attitude, punctuality, actions and/or future work performance, imposition of more stringent work standards in her Performance Planning and Review and by threats of dismissal and improper processing of her automobile claims. In her response to defendant's motion to dismiss, however, plaintiff lists fourteen alleged acts that she asserts constitute retaliation. Plaintiff alleges that a finding that any or all of the alleged actions occurred would result in a finding that defendant retaliated against her.

▇ In ruling on whether summary judgment is proper on this second claim of retali-

ation, the court must first dispose of some of the alleged retaliatory acts that do not constitute adverse employment action. First, with respect to plaintiff's retaliation claim based upon her automobile insurance claims, defendant argues that its alleged failure to handle the claims properly does not amount to adverse employment action. The court agrees.

In order to establish a violation of the ADEA, a plaintiff an adverse action related to the "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623. Defendant argues in its motion for summary judgment that plaintiff's treatment with respect to her automobile claims arises from her status as a policyholder and not as an employee. Plaintiff did not challenge this argument at all in her response to the motion for summary judgment. Furthermore, the Auto Claim Committee Report attached to plaintiff's response lists her husband, Cecil Young, as the insured party.

The court holds that the handling of plaintiff's insurance claims is not a matter affecting "compensation, terms, conditions or privileges of employment." 29 U.S.C. § 623. Accordingly, plaintiff cannot assert a claim of retaliation in violation of the ADEA based upon allegations that the insurance claims were mishandled and any such claim is dismissed.

Second, plaintiff's argument that State Farm's action in "taking extraordinary and unnecessary measures to obtain confidential information and communications to use against her" demonstrates retaliatory motive is unsupported by the record. Plaintiff has not pointed to any evidence of such action in the record on this motion. If, as the court believes, plaintiff intends to argue that State Farm's attempts in this litigation to conduct discovery of material related to plaintiff's medical records constitutes retaliatory action, the claim is without merit. Defendant's discovery attempts in this lawsuit cannot fairly be characterized as the "terms, compensation, conditions or privileges of employment."

---

11. Because the court finds enough evidence to preclude summary judgment on plaintiff's retaliatory denial of promotion claims, the court need not discuss plaintiff's other evidence of pretext.

The court will simply note that plaintiff has presented other evidence that creates issues of fact as to whether Noel's stated reasons for not promoting plaintiff are pretextual.

■ Plaintiff has demonstrated issues of fact sufficient to preclude summary judgment on her second retaliation claim with respect to some of her other allegations of adverse employment actions, however. Specifically, plaintiff offered evidence that her desk was searched at work and that property was removed from it. Plaintiff also alleges that she was subjected to numerous ad hoc meetings concerning her PPR and work performance and that false information and open door policy information was put in her shield. Further, there is a material issue of fact as to whether or not plaintiff was intimidated or coerced in an effort to have her sign inaccurate statements about her work performance at these meetings. Defendant has not offered legitimate and nondiscriminatory reasons for such actions, provided that plaintiff can establish they occurred.[12]

**IV.** *Summary.* Defendant's motion to dismiss some of plaintiff's claims for failure to exhaust administrative remedies and to comply with statutes of limitation is denied. Plaintiff's claim of malicious harassment is dismissed for failure to state a claim. Plaintiff has produced no probative evidence creating issues of fact as to whether or not defendant discriminated against her on the basis of age by not granting her requests for promotions. Plaintiff has introduced no probative evidence of age discrimination in relation to any other allegedly adverse employment actions on the part of defendant. Accordingly, defendant's motion for summary judgment on plaintiff's age discrimination claims is granted in full. Plaintiff has, on the other hand, demonstrated the existence of sufficient issues of fact precluding a grant of summary judgment on all her retaliation claims.

Accordingly, defendant's motion for summary judgment is granted in part and denied in part.

IT IS SO ORDERED.

---

12. Instead of attempting to articulate legitimate reasons for these actions, defendant asserts that these allegations do not constitute adverse employment action. Contrary to defendant's position, these alleged actions obviously concern the terms and conditions of plaintiff's employment.