USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 96-2062 MANUEL GALVAO, Plaintiff, Appellant, v. THE GILLETTE COMPANY, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin and Bownes, Senior Circuit Judges. _____________________ ____________________ Mark F. Itzkowitz for appellant. _________________ Richard P. Ward with whom Bonnie B. Edwards was on brief for ________________ __________________ appellee. ____________________ August 12, 1997 ____________________ COFFIN, Senior Circuit Judge. Appellant Manuel Galvao, a ____________________ black Cape Verdean male, contends that the district court erred in dismissing his federal and state discrimination and retaliation claims against his former employer, the Gillette Company ("Gillette").1 He also maintains that the district court erred in denying his former counsel's motion to withdraw. We affirm.  FACTS _____ We recite the facts in the light most favorable to the party opposing summary judgment. See Fennell v. First Steps Designs, ___ _______ ____________________ Ltd., 83 F.3d 526, 534 (1st Cir. 1996). The incidents underlying ____ this case began in approximately 1989, when Galvao was working in the Boston Research and Development Division (BRAD) of Gillette as a Grade 7 technician. He sought a promotion or upgrade of his job classification, which was denied.2 Instead, Gillette supervisors presented Galvao with a Career Development plan designed to qualify him for promotion to a Grade 8 position. On Galvao's protest, an audit of his position was performed by the Gillette Human Resources Compensation Department, which concluded that his position was properly graded. Galvao sought and  ____________________ 1 Galvao specifically claims that it was Gillette as a corporate entity, and not any specific individuals there, who discriminated against him. 2 There seems to be some confusion as to whether the change sought was a promotion or a regrading of Galvao's existing job. Indeed, Galvao himself testified in his deposition that he was unclear as to the distinction between the two. The issue is irrelevant to our analysis, however, since Galvao is unable to show that there were others similarly situated for either circumstance.  -2- received a review of the audit by Gillette's Open Door Review Panel, which also upheld the denial of the upgrade.3  In July 1992, Galvao filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"), alleging that he had been denied a promotion and given a negative performance evaluation due to his race, color and national origin. He maintains that after his filing, his supervisors distanced themselves from him, and subjected him to greater criticism and demands. He was assigned to a new supervisor, Dr. Hoang Mai Trankiem, in February 1993.4 Although Trankiem and Galvao initially had a positive relationship as a result of an in-house project they had previously worked on together, relations between them rapidly deteriorated. Trankiem instituted a system of daily worksheets and productivity reports on Galvao, and, according to him, exerted tremendous pressure on him, with the result that he felt increasingly stressed. Despite repeated requests by Galvao to both Trankiem and her supervisor, Dr. Stan Wreford, for intervention vis a vis his working responsibilities and  ____________________ 3 The Panel was composed of Doris Ferrer Roach, an attorney in Gillette's General Counsel's Office and a Hispanic female; Timothy W. Horan, Director of Human Resources- Manufacturing, a white male; and Robert A. Williams, III, Vice President, Corporate Director, Urban Affairs, a black male.  4 Dr. Trankiem is a Vietnamese female. Trankiem testified in her deposition that she requested she supervise Galvao in an effort to improve his productivity, which had become a source of concern under a previous supervisor. -3- Trankiem's supervision of him, no help was forthcoming.5 Rather, Galvao was eventually provided with a Final Written Warning,6 and then terminated on November 8, 1993. He subsequently filed suit, bringing both federal and state discrimination and retaliation claims. The district court granted summary judgment for Gillette, and this appeal followed. DISCUSSION __________ We review the district court's grant of summary judgment de __ novo. See Mesnick v. General Electric Co., 950 F.2d 816, 822 ____ ___ _______ ____________________ (1st Cir. 1992). In so doing, we have thoroughly reviewed the record and the briefs, and find ourselves in accord with the district court's conclusions. Mindful that where a district court has produced a comprehensive, well-reasoned opinion, we should not needlessly expound at length, we discuss each of Galvao's claims briefly. See Lawton v. State Mut. Life Assur. ___ ______ _______________________ Co. of America, 101 F.3d 218, 220 (1st Cir. 1996).  ______________ 1.Title VII Discrimination. _________________________ Under the well-established McDonnell Douglas framework for Title _________________ VII cases, see McDonnell Douglas Corp. v. Green, 411 U.S. 792 ___ ________________________ _____ (1973); see also Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, ___ ____ _____ _______________________ 420 (1st Cir. 1996), a plaintiff seeking to prove discrimination  ____________________ 5 In one memo to Dr. Wreford, Galvao described Dr. Trankiem's management style as "Vietnamese" and said he was being subjected to psychological torture and treated like a prisoner or a slave.  6 As part of his Final Written Warning, Galvao was upgraded to Grade 8 by Dr. Trankiem in an effort to remove a perceived barrier to his productivity.  -4- without direct evidence of bias must first establish a prima facie case of discrimination. See Lattimore v. Polaroid Corp., ___ _________ ______________ 99 F.3d 456 (1st Cir. 1996).7 This is accomplished by showing that the employee is a member of a protected class and that similarly situated employees who were not members of the class were treated more favorably. See id. If such a showing is made, ___ __ the burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its actions. See id. Once this is ___ __ accomplished, the employee may then attempt to prove that the proffered reason is a pretext. See id.8  ___ __ The district court found that Galvao had failed to show that there were similarly situated employees who could be used as a basis of comparison. We see no flaw in its reasoning. The employees identified by Galvao either were not in the same grade as him, or they worked in different areas.  We recently cautioned that courts must exercise particular care when evaluating a plaintiff's claim that an employer applied  ____________________ 7 Cases decided under the ADEA (Age Discrimination in Employment Act, 29 U.S.C. 621-634) are applicable in the Title VII context, see Fennell, 83 F.3d at 535 n. 9, and we therefore ___ _______ cite to cases of both types for purposes of the McDonnell-Douglas _________________ analysis.  8 The district court concluded this was a "non- competitive promotion" case (rather than what it termed a "garden variety" failure to promote case), and therefore adopted a modification promulgated in a district court case in Tennessee, Young v. State Farm Mut. Auto. Ins. Co., 868 F.Supp. 937, 944-45 _____ ______________________________ (W.D. Tenn. 1994). As both the "garden variety" and "non- competitive promotion" analyses require a plaintiff to address the key issue here -- i.e. whether the plaintiff is treated differently from others similarly situated -- we do not for the present distinguish between non-competitive promotion and other failure to promote cases.  -5- its standards differentially (i.e., distinguished between the ____ plaintiff and those similarly situated). See E.E.O.C. v. Amego, ___ ________ ______ Inc., 110 F.3d 135, 145 (1st Cir. 1997)(citing Banerjee v. Board ____ ________ _____ of Trustees, 648 F.2d 61, 63 (1st Cir. 1981))(in academic tenure ___________ context, plaintiffs who were denied tenure must show that their qualifications are at least comparable to those of "a middle group of tenure candidates as to whom both a decision granting tenure and a decision denying tenure could be justified as a reasonable exercise of discretion by the tenure-decision making body"). A plaintiff must be able, at a minimum, to demonstrate that there are at least some basically comparable employees. Galvao was unable to do this. Although the district court's finding that Galvao had failed to make out a prima facie case made it unnecessary to continue the McDonnell Douglas analysis, the district court went on to _________________ find that Gillette's proffered reason for not upgrading Galvao -- that he lacked the credentials and characteristics of a Grade 8 technician -- was not a pretext. The district court thoroughly addressed the evidence on this issue, and we need not repeat it. We agree that, on this record, a jury could not conclude that Gillette's reasons were pretextual, and Galvao s Title VII discrimination claim therefore fails.  2. Title VII Retaliation. ______________________ Galvao also contends that the district court erred in dismissing his separate claim that Gillette retaliated against him for filing the MCAD complaint. He asserts that his -6- supervisor subjected him to undue supervision and assessment, and ultimately terminated him in response to his administrative claim.  The McDonnell Douglas burden shifting analysis is also used _________________ in retaliation claims where there is no direct evidence of a defendant's retaliatory animus. See Fennell, 83 F.3d at 535. A ___ _______ plaintiff seeking to show a prima facie case of retaliation under Title VII must show 1) he or she engaged in protected conduct under Title VII and that the alleged retaliator was aware of it, 2) an adverse employment action, and 3) a causal connection between the first two elements. See id.; see also Petitti v. New ___ __ ___ ____ _______ ___ England Tel. & Tel. Co., 909 F.2d 28, 33 (1st Cir. 1990). Once _______________________ this showing has been made, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. See Fennell, 853 F.3d at 535. ___ _______ Even given a generous reading, Galvao's retaliation claim falters. While he can establish that he engaged in protected conduct -- the filing of the MCAD complaint -- he has failed to show that Gillette personnel knew about this at the time of the allegedly adverse employment actions, or that there was a causal relationship between his filing his MCAD complaint and the challenged conduct. As the district court explained, the record shows that the adverse employment actions of which he complains, including his termination, were the result of his own poor performance and insubordination.  -7- 3. Motion of Counsel to Withdraw. ______________________________ Galvao also contends that the district court erred in denying his previous counsel's motion to withdraw. He argues that the court's ruling compelled him to continue with counsel in whom he had lost faith, and whose commitment to his case he doubted, and that his case was thereby prejudiced. Under Local Rule 83.5.2(c), because successor counsel had not been obtained by Galvao, it was within the court's discretion whether to grant his counsel's motion to withdraw.9 In the circumstances, we cannot say that the court's refusal to do so was an abuse of discretion. See Andrews v. Bechtel Power Corp., 780 F.2d 124, ___ _______ ___________________ 135 (1st Cir. 1985). Title VII litigation is complex and a pro se litigant embarks on this path with some significant disadvantage. The court's conclusion that Galvao was better off with counsel, even if they were not exactly seeing eye to eye, was not an unreasonable one. Moreover, the court indicated that it would be willing to reconsider the issue later. Furthermore,  ____________________ 9 Rule 83.5.2(c) states: An attorney may withdraw from a case by serving notice of his withdrawal on his client and all other parties and filing the notice, provided that (1) such notice is preceded or accompanied by notice of the appearance of other counsel; (2) there are no motions pending before the court; (3) no trial date has been set; and (4) no hearings or conferences are scheduled, and no reports, oral or written, are due. Unless these conditions are met, an attorney (including one whose services have been terminated by his client) may withdraw from a case only by leave of court. -8- although we realize that a serious difference existed between Galvao and his counsel, it appears from the record that the district court made every effort to permit Galvao to present his case as he wished.10  Additionally, Galvao's counsel was bound by an ethical obligation to prosecute his case fully and effectively. See ___ Hammond v. T.J. Little, 809 F.Supp. 156, 159 (D.Mass. 1992). _______ ____________ Galvao maintains that his counsel failed to do so because she did not present various documents obtained during the course of discovery to the court which he alleges would have bolstered his case. We decline Galvao's invitation to second guess his counsel's strategic decisions about the evidence to present in support of a claim.  4. State law claims. _________________ Finally, Galvao appeals the dismissal of his state law discrimination and retaliation claims by the district court, arguing that under the more relaxed standard used in Massachusetts ("pretext only"), a jury could have found, on the basis of the evidence that he presented, that Gillette's reasons for failing to upgrade him and terminating him were pretextual. In support of this contention, Galvao cites Blare v. Husky _____ _____ Injection Molding Systems Boston, Inc., 419 Mass. 437 (1995). We ______________________________________  ____________________ 10 In a pretrial hearing, the district court specifically informed Galvao that he had instructed his counsel that in any situation where a difference arose between Galvao and counsel as to the presentation of arguments, Galvao's counsel should present it both in the form that Galvao wished and in the form that counsel's legal judgment suggested. -9- read Blare as holding that Massachusetts, while adhering to the _____ three stage McDonnell Douglas analysis, requires that a plaintiff _________________ show only that it was more likely than not that the articulated reason for the employer's action was pretextual, rather than providing more direct proof of discriminatory motive by the employer, as the federal standard requires. See id. at 444-45; ___ __ see also Lattimore, 99 F.3d at 465. As discussed, infra (and ___ ____ _________ _____ putting to one side his failure to show that there were similarly situated employees), Galvao failed to adduce any significant evidence to support his claim that Gillette's articulated reasons for its actions were pretextual. Accordingly, his state claim founders on this lack of evidence of pretext, just as his federal one did.  Affirmed. _________ -10-